HEALTH RESOURCES FOUNDATION, Plaintiff-Appellee, *v.* THE DEPARTMENT OF HEALTH *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 77-158, 77-348 cons.

Opinion filed May 31, 1978.

William J. Scott, Attorney General, of Chicago (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellants.

Jann, Carroll, Kruse & Sain, Ltd., of Chicago (Alan H. Garfield and L. David Rish, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

This appeal brings before us the extended efforts of Health Resources Foundation, an Illinois not-for-profit corporation (plaintiff), to obtain a permit from the defendants, Department of Health of the State of Illinois (Department) and the Director of the Department, Joyce C. Lashoff, M.D. (Director), for the establishment of a hospital in Matteson, Illinois. The circuit court entered an order reversing the Department and directing issuance to plaintiff of an initial permit for establishment of the hospital *nunc pro tunc* as of December 18, 1973. The final order required defendants to accept plaintiff's construction plans within 30 days, provided "said plans meet all applicable building codes." The trial court also ruled that the requirements of the Illinois Health Facilities Planning Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1151 *et seq.*), do not apply to plaintiff's license application. The defendants have appealed.

In this court, defendants urge that the complaint originally filed by plaintiff in the circuit court should have been dismissed for failure to exhaust administrative remedies; after the Department had rendered a final decision plaintiff's sole remedy was administrative review; the decision of the Department denying the permit is supported by substantial evidence and is not against the manifest weight of the evidence; Rule 1—1.4(a) of the Department is valid and, even if the rule is invalid, the order appealed from was improper in granting *nunc pro tunc* relief and in ruling that the Health Facilities Planning Act is not applicable to plaintiff.

In opposition, plaintiff urges that irreparable harm would have resulted to plaintiff from further pursuit of administrative remedies; the Administrative Review Act was not plaintiff's only remedy; Rule 1—1.4(a) was vague and was applied to plaintiff in an arbitrary manner; authority of administrative agencies to make findings is subject to judicial review;

the record shows that Rule 1—1.4(a) was complied with by plaintiff and the Health Facilities Planning Act does not apply to plaintiff's application.

A summary of the litigation is necessary. Plaintiff was desirous of obtaining a permit from defendants for establishment of a hospital in Matteson. The permit is required by the Hospital Licensing Act (Ill. Rev. Stat. 1975, ch. 111½, par. 142 *et seq.*). In February 1973, plaintiff requested the Department to transfer to plaintiff an unused permit for this same area, which had been granted to Lutheran South Hospital in 1965. This request was denied. (Note Ill. Rev. Stat. 1975, ch. 111½, par. 147(a), prohibiting such transfer.)

On December 18, 1973, plaintiff filed application with defendants for issuance of its own permit. There was correspondence and other communication between the parties throughout 1974. A great deal of complicated financial data and other information was requested of plaintiff. We note that plaintiff maintains this delay was due to the arbitrary and discriminatory conduct of defendants. Defendants urge that any delay was caused by plaintiff's failure to furnish exact information and by changes made in financial information previously furnished.

In July 1974, plaintiff filed suit against defendants in the United States District Court for the Northern District of Illinois. Plaintiff's position was that defendants had arbitrarily denied plaintiff its civil rights. The District Court "found abstention to be appropriate\* \* \*" and dismissed the cause without prejudice. *Health Resources Foundation v. Illinois Department of Public Health,* No. 74 C 1832 (N.D. Ill., filed Nov. 4, 1974) (mem. op. at 4).

Pursuant to authority granted in the Hospital Licensing Act, the Director has promulgated rules and regulations to aid in implementing the provisions of the Act. (Ill. Rev. Stat. 1975, ch. 111½, par. 151(c).) Until May 12, 1976, Rule 1—1.4(a) provided in part:

> "The financial resources available to provide for the total project costs must consist of a minimum of 40 percent unborrowed equity and no more that 60 percent of indebtedness."

It is undisputed that on May 12, 1976, the Department modified these requirements by reducing the equity required from 40 percent to 20 percent. However, defendants urge that the 40-percent requirement remains in effect as to plaintiff since this was the requirement in effect at the time plaintiff's application was considered. Defendant further contends that plaintiff failed to meet the 40-percent equity requirement and therefore the denial of its permit was proper.

On August 5, 1975, plaintiff filed a complaint in the circuit court seeking injunctive relief and a declaratory judgment that Rule 1—1.4(a) of the Department, as applied to plaintiff, was arbitrary and discriminatory and that plaintiff should not be required to comply with the Health Facilities

Planning Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1151 *et seq.*). Up to that date no formal administrative hearing had been held by defendants regarding plaintiff's permit application, which had been pending since December 18, 1973. Defendants filed a motion to strike and dismiss the complaint on the grounds that an administrative remedy did exist and that the Administrative Review Act was plaintiff's exclusive remedy. After denial of the motion, defendants filed an answer together with affirmative defenses pertaining primarily to limitation of plaintiff's remedy to administrative review.

During the pendency of the court case, an administrative hearing was commenced by defendants. As directed by the circuit court, plaintiff attended and participated in these hearings. On December 10, 1975, after conclusion of the hearings, the hearing officer filed a report which included his findings of fact. He found that plaintiff's initial application for a permit indicated construction costs to be $22,650,000. He then determined that under the 40-percent rule plaintiff was required to have an unborrowed reserve of $8,600,000.[1] The hearing officer also found that the cost of the project had risen to $32,800,000 "and the equity required would be increased correspondingly." Plaintiff had advised the hearing officer that the increased equity "could not be furnished." It was accordingly recommended that plaintiff's application for permit be denied.

In his report, the hearing officer also commented upon the confusion that had resulted from the Department's failure to spell out the basic requirements of Rule 1—1.4(a). He found that the "Department must assume some responsibility* * *" for this situation.

On December 23, 1975, the Director approved the hearing officer's report and noted that plaintiff's initial application showed a total project cost of $31,500,000, but that on April 4, 1974, plaintiff had revised this estimate to $22,650,000. The Director further asserted that plaintiff's documentation of the sources of funding, which it submitted to the defendants on October 3, 1975, indicated the total project cost to be $32,800,000. The Director also found that plaintiff claimed "$9,455,000 as unborrowed equity." Of this amount, the Director accepted $8,055,000 rejecting $1,400,000 as being restricted to nonconstruction uses. The Director also found that plaintiff's project was to be financed in part by a $30,000,000 bond issue which "constitutes [an] indebtedness [exceeding] 60% of the financial resources available." The Director concluded that this was a violation of the Department's rule. The application was accordingly denied.

In January 1976, with leave of court, plaintiff amended its complaint by

---

[1]We note that 40 percent of $22,650,000 is not $8,600,000. Apparently the hearing officer used $21,500,000 as a basis from which to compute the reserve. This latter figure was the final estimate of project costs made by plaintiff.

adding a second count. In count II plaintiff sought administrative review of the defendants' decision not to issue a permit and also sought invalidation of Rule 1—1.4(a). Defendants obtained leave of court to withdraw their original answer and to file a motion to dismiss count I. The trial court subsequently denied the motion to dismiss and reinstated defendants' answer to count I. The record of the administrative hearing previously filed with the court was accepted as defendants' answer to count II. In November 1976, the trial judge filed a lengthy memorandum opinion and ruling and in December 1976, he entered the final judgment order, above summarized, which is the subject of this appeal.

■■ The first issue pertains to defendants' contention that plaintiff failed to exhaust administrative remedies and that count I of the complaint should have been dismissed. It is defendants' theory that upon conclusion of the administrative hearings plaintiff's sole remedy was limited to judicial review thereof. Defendants cite authorities which hold that the provisions of the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*) may not be lightly disregarded and the law requires exhaustion of administrative remedies by initial recourse to administrative procedure with subsequent recourse to judicial procedure by way of administrative review. *People ex rel. Naughton v. Swank* (1974), 58 Ill. 2d 95, 317 N.E.2d 499; *Chicago Welfare Rights Organization v. Weaver* (1973), 56 Ill. 2d 33, 305 N.E.2d 140, *appeal dismissed* (1974), 417 U.S. 962, 41 L. Ed. 2d 1135, 94 S. Ct. 3164.

■■ This rule requiring the exhaustion of administrative remedies is restated in *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737, which is cited by defendants. That case also states an exception to the rule where "an ordinance or statute is attacked as unconstitutional in its entirety* * *." (*Allphin,* 60 Ill. 2d 350, 358.) However, in our opinion, the controlling decision here is *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223. The supreme court there held "a party need not exhaust his administrative remedies where the statute, or in this instance, administrative rule, is attacked on its face." *Bio-Medical Laboratories, Inc.,* 68 Ill. 2d 540, 548.

■■ In the case before us, count I of plaintiff's complaint was filed August 1, 1975. This occurred almost 2 years after the filing of plaintiff's application. The entire theory of this count was that defendants had been dilatory and arbitrary and that the requirement of Rule 1—1.4(a) promulgated by defendants is arbitrary and discriminatory. Under these circumstances, since the first count of plaintiff's complaint, attacked on its face an administrative rule promulgated by defendants, no exhaustion of administrative remedies was required. Count I was properly before the trial court for decision.

The next issue is whether the result reached by the administrative

agency and later reversed by the trial court, was legally proper. Upon initial reading of Rule 1—1.4(a) the matter seems uncomplicated. The rule contains a requirement that an applicant must be able to show that it has a minimum of 40 percent of the "total project costs" in the form of "unborrowed equity." This portion of the rule seems clear. It merely requires the Department to estimate the total project costs and determine if the applicant has 40 percent of that amount free of all debts. However, it appears from the record that the Department does not view this requirement as referring only to a percentage of total project costs. The testimony of the Department's expert at the administrative hearing and the findings of the Director indicate that the Department greatly increased plaintiff's total project cost by equating it with the amount of debt to be incurred through a proposed bond issue.

The testimony on this point is extremely confusing. Suffice it to say that at the conclusion of the hearing the Director found the total project cost to be $32,800,000 and the unborrowed equity to be $8,055,000 which is less than the 40 percent required by the rule. We do not agree with the Director's cost figure and, based on all the evidence, we believe that the $8,055,000 claimed by the Director as plaintiff's equity comes very close to satisfying the 40 percent equity requirement. However, we need not decide these issues, for, as explained below, we find that the 40 percent requirement should never have been applied in this case.

■■ On May 12, 1976, defendants amended Rule 1—1.4(a) so as to reduce the equity requirement from 40 percent to 20 percent of the project cost. This was some 5 months after the report filed by the hearing officer at the conclusion of the administrative hearings. The nature and extent of this reduction casts some doubt on the validity of the rule as originally promulgated. First, a reduction of this type was most likely contemplated by the Department some time prior to its announcement. Although the effective date of the reduction came after the conclusion of the administrative hearings, it preceded the disposition of the matter on administrative review. Second, this was a very substantial change, reducing the equity requirement by half, and yet no reasons for the reduction appear before us. This action of the Department is a strong indication that the 40-percent requirement was completely unrealistic and impractical. If the 20-percent equity requirement is sufficient after May 5, 1976, we fail to understand why it was not equally sufficient prior to that date. Where an administrative agency "has acted arbitrarily or capriciously and has thereby abused the discretion vested in it, the courts should not hesitate to intervene." (*Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill. 2d 204, 207, 326 N.E.2d 406.) In our opinion, plaintiff should have the benefit of this reduction and the amount of equity it must establish should be determined on the basis of 20 percent of the project cost.

■■  Viewing plaintiff's application based on the 20 percent requirement, we feel that plaintiff has demonstrated sufficient financial resources to warrant issuance of a permit. As shown above, the Department's estimate of project cost was $32,800,000. Even using this inflated cost figure, the plaintiff's admitted reserve of $8,055,000 is in excess of the 20 percent required. We therefore conclude that plaintiff is entitled to the issuance of an initial permit for establishment of its hospital.

In the order appealed from, the trial court directed that the initial permit be issued to plaintiff *nunc pro tunc* as of December 18, 1973, the date plaintiff filed its initial application. It appears from the trial court's memorandum that this was done so that the Illinois Health Facilities Planning Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1151 *et seq.*), which we will shortly discuss, would not apply to plaintiff's application. The memorandum filed by the trial court makes clear that the court was of the opinion that by far the greater portion of the blame for the administrative delay in determining plaintiff's rights rested upon defendants, so that as a matter of fairness and equity the date of the approval of the permit should be moved back to the date of application, December 18, 1973. This date was far before the August 1974 effective date of the Illinois Health Facilities Planning Act.

■■  The phrase *nunc pro tunc* literally means "now for then." (Black's Law Dictionary 1218 (4th ed. 1957).) In *Grissom v. Buckley-Loda School District No. 8* (1973), 11 Ill. App. 3d 55, 296 N.E.2d 624, *appeal denied* (1973), 54 Ill. 2d 592, this court held that a trial judge lacked authority to enter a money judgment on August 4, 1972, *nunc pro tunc* as of July 31, 1972. The court pointed out that a *nunc pro tunc* order is a "device to supply an omission and to enter of record an order actually made, but omitted from the record. It may correct clerical misprisions, but not supply omitted judicial action nor correct judicial errors." (Italics omitted.) (*Grissom*, 11 Ill. App. 3d 55, 59, quoting from *Chapman, Mazza, Aiello, Inc. v. Ace Lumber & Construction Co.* (1967), 83 Ill. App. 2d 320, 337, 227 N.E.2d 562. See also *Dauderman v. Dauderman* (1970), 130 Ill. App. 2d 807, 809, 263 N.E.2d 708.) In the case before us, no proceedings were pending before the trial court on December 18, 1973, when plaintiff's application was filed. Therefore, in this case there was no omission or misprision to correct. In our opinion, it follows that insofar as the order appealed from directed issuance of the permit *nunc pro tunc* as of December 18, 1973, the order was erroneous and is accordingly reversed.

The Illinois Health Facilities Planning Act became effective on August 27, 1974 (Ill. Rev. Stat. 1975, ch. 111½, par. 1151 *et seq.*). The legislative purpose of the Act is stated to be an attempt to "reverse the trends of increasing costs of health care resulting from unnecessary construction or modification of health care facilities." (Ill. Rev. Stat. 1977, ch. 111½, par.

1152.) The Act created the Health Facilities Planning Board (Ill. Rev. Stat. 1977, ch. 111½, par. 1154). In deciding whether to issue a permit for a new health care facility, the Board is required to consider a number of factors, one of which is the community's need for the proposed facility. (Ill. Rev. Stat. 1977, ch. 111½, par. 1156.) In defining the health care facilities covered by the Act, the legislature specifically included all institutions which were required to be licensed under the Illinois Health Facilities Planning Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1153(2)) except those for which final construction plans and specifications had been submitted to and approved by the Department of Public Health prior to October 1, 1974. Ill. Rev. Stat. 1977, ch. 111½, par. 1155.

In our opinion, the proposed hospital here under consideration comes squarely within the purview of the Health Facilities Planning Act and should be required to qualify thereunder. Regardless of any other factor, the record before us shows that the final plans and specifications were not approved by the Department until July 13, 1977, long after the statutory exemption date had passed. Permitting plaintiff to establish its hospital without obtaining approval under the Health Facilities Planning Act would be directly contrary to the stated legislative purpose.

■■ Further, the record before us indicates that on April 14, 1975, plaintiff's attorney met with two members of defendants' staff. The attorney was informed that it might be advantageous for his client to apply immediately to the Illinois Health Facilities Planning Board for a permit. The attorney was further advised that the two departments were correlating their activities and were utilizing the same application form. He was also informed that accounting assistance would be supplied to make determinations regarding the 40 percent equity requirement and also to satisfy the requirements of the Health Facilities Planning Board. Thus it is evident that the plaintiff was aware that it might be required to apply to the Board and that it was given an opportunity to do so. We therefore hold that insofar as the order appealed from provided that the requirements of the Health Facilities Planning Act do not apply to plaintiff's application, it is reversed.

On December 16, 1977, plaintiff filed in this court a motion to dismiss the appeal. In a brief in support thereof, counsel for plaintiff represented, with copies of supporting documents appended, that on February 28, 1977, the Director sent plaintiff a letter constituting an initial permit. The letter stated that the permit was issued pursuant to the judgment order here appealed from and was to be considered issued as of December 18, 1973, the date of application. On July 13, 1977, the Director sent plaintiff a letter constituting final approval of architectural plans and specifications for the construction of the proposed hospital. On October 7, 1977, the Director wrote plaintiff a lengthy letter summarizing changes in the

financial structure of the project. The letter stated that the information then submitted by plaintiff did not, in the opinion of the Department, support the request for final permit. However, the letter stated that it was to be considered as a final permit issued as of December 18, 1973, pursuant to the order herein appealed from.

In the motion to dismiss, counsel for plaintiff took the position that since defendants have voluntarily granted the initial permit and the final permit, the case presently involves no actual controversy and is moot so that the appeal should be dismissed. Plaintiff cites *Maywood Park Trotting Association, Inc. v. Illinois Harness Racing Com.* (1959), 15 Ill. 2d 559, 155 N.E.2d 626; *Central States Import & Export Corp. v. Illinois Liquor Com.* (1950), 405 Ill. 58, 89 N.E.2d 903; and *Daley v. License Appeal Com.* (1965), 55 Ill. App. 2d 474, 205 N.E.2d 269.

Defendants filed objections to plaintiff's motion to dismiss the appeal. The objections reviewed the correspondence above described and took the position that since these permits, both initial and final, were issued by defendants in accordance with the judgment order appealed from, there should be no waiver or estoppel.

This court took the motion to dismiss the appeal with the case. In *Pinkstaff v. Pennsylvania R.R. Co.* (1964), 31 Ill. 2d 518, 202 N.E.2d 512, the supreme court held that a judgment debtor may appeal from a judgment even after he had paid it in full. The court held that "A payment made under such circumstances would be compulsory\* \* \*." (*Pinkstaff,* 31 Ill. 2d 518, 523.) In *In re Estate of Hackett* (1977), 51 Ill. App. 3d 474, 366 N.E.2d 1103, this court held that where an executor amended his final report to show a reduced fee and actually paid this amount, he waived no error and was permitted to appeal. "Since this distribution was made pursuant to court order, no release or waiver of error occurred." (*Hackett,* 51 Ill. App. 3d 474, 479.) The court in *Hackett* cites *Alexander Lumber Co. v. Busboom* (1970), 122 Ill. App. 2d 342, 259 N.E.2d 76. There, a judgment debtor made payment of the judgment but the court refused to dismiss his appeal as moot. The court cited *Pinkstaff* and other decisions.

■■ On the authority of these cases, we hold that since defendants issued the permits in question under the compulsion of and in accordance with the judgment order presently appealed from, there has been no waiver of appeal or release of errors, the issue is not moot and the defendants are not estopped from prosecuting their appeal. Plaintiff's motion to dismiss the appeal is accordingly denied.

Insofar as the judgment order appealed from directs and authorizes the issuance of an initial permit to plaintiff by defendants, it is affirmed. Insofar as said order directs that the permit be issued *nunc pro tunc* as of December 18, 1973, and insofar as it provides that the requirements of the

344

Health Facilities Planning Act do not apply to plaintiff's application for a permit, said order is reversed.

Affirmed in part; reversed in part.

McGLOON and O'CONNOR, JJ., concur.