LEO MICHUDA & SON CO., Plaintiff-Appellee, *v.* THE METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO *et al.*, Defendants-Appellants.

First District (1st Division)    No. 80-3159

Opinion filed June 15, 1981.

Allen S. Lavin and James B. Murray, both of Chicago, for appellants The Metropolitan Sanitary District of Greater Chicago and Melvin K. Goldman.

Stephen M. Maish, of Griffith, Indiana, and Roger L. Price, of Aaron, Schimberg, Hess, Rusnak, Deutsch & Gilbert, of Chicago, for appellant Brant Construction Company, Inc.

O'Brien, Carey, McNamara, Scheuneman & Campbell, Ltd., of Chicago (Donald V. O'Brien, John C. O'Rourke, Jr., and William H. Barrett, of counsel), for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant Brant Construction Company, Inc. (Brant), defendant Metropolitan Sanitary District of Greater Chicago (the District), and defendant Melvin K. Goldman, purchasing agent of the District, appeal from an order issued by the trial court permanently enjoining Brant and the District from executing any contract documents for a construction project entitled "Replace Roof on Digester 2 and Miscellaneous Work, Contract 78—208—2P" (the project) and from engaging in the performance of any work described therein and enjoining the District and Goldman from awarding any contract for the project to any contractor other than plaintiff Leo Michuda & Son Co. (Michuda). The District and Goldman also appeal from the trial court order granting the issuance of a writ of *mandamus* directing the District to award the contract for the project to plaintiff Michuda.

On or about August 13, 1980, the District advertised for bids for the project. The work to be performed consisted of raising and replacing Digester No. 2 roof, providing a liquid polymer storage and transfer system to alleviate the manual transfer of hazardous materials and other miscellaneous work. On September 3, 1980, the District issued Addendum No. 1 to the project. This addendum included an "Appendix D, Notice of Requirements for Affirmative Action Plan to Insure Small and Minority Business Participation" (Appendix D). Appendix D notified bidders that the "goal of the [District] is to provide to the maximum extent possible 10% of the total dollar value of each project to minority and small business enterprises, and to surpass the stated goal wherever feasible." Appendix D required that the bidders submit with the bidding documents a "Goal Disclosure Form" listing the minority subcontracts intended for award to minority and small businesses.

Four companies, including Michuda and Brant, submitted bids in response to the District's advertisement. On September 9, 1980, the submitted bids for the project were opened publicly, resulting in the following bids: Brant Construction Company, Inc., $536,700; Leo Michuda & Son Co., $594,000; Independent Mechanical Industries, Inc., $666,500; Illinois Construction Co., Inc., $799,000. The District's engineer's estimate of the cost of the work was $420,000.

In connection with their bids, each bidder submitted a Goal Disclosure Form. The Goal Disclosure Form submitted by Brant contained the following statement:

"No firm contractual commitments at this time, but we will use every available means to obtain the services of Minority Business Enterprises in performing this work."

The Goal Disclosure Form submitted by Michuda was completed in accordance with the requirements of Appendix D and included the name, address, description of work and agreed price of $60,000, which is over 10% of its total bid to be paid to its minority subcontractor. None of the bidders submitted a letter of intent with its bid.

On October 6, 1980, Brant submitted to the District a second Goal Disclosure Form, which included the names and addresses of two minority subcontractors and agreed prices totaling approximately 18% of Brant's bid.

On November 6, 1980, the District's board of trustees, by resolution, set forth its intent to award a contract for the project to Brant. On that same day, Michuda filed its emergency complaint for declaratory judgment, writ of mandamus and other relief, and an emergency motion for temporary restraining order and preliminary injunction.

On November 12, 1980, the trial court entered a preliminary injunction enjoining defendants from executing any contract documents and from engaging in the performance of any work on the project.

On December 2, 1980, the trial court entered a permanent injunction enjoining defendants Brant and the District from executing any contract documents for the construction of the project and from engaging in the performance of any work on the project, and enjoining the District and Goldman from awarding any contract for the construction of the project to any contractor other than Michuda. The trial court found that Brant failed to comply with the minority requirements of the bidding documents and that such failure was a material omission and therefore Brant's bid was nonresponsive.

On December 4, 1980, the District's board of trustees rescinded the award of the contract to Brant. Thereafter, defendant Goldman rejected all of the bids for the project due to his determination that Michuda's bid was excessive because it was 42.5% above the District's estimate. At the hearing on the petition for *mandamus*, Goldman testified that his reason for rejecting all bids was the hope that upon a rebid of the project the bids would be lower.

On December 23, 1980, the trial court found that defendant Goldman had abused his discretion in rejecting all bids and entered a writ of *mandamus* directing the District to enter into a contract with Michuda for

the project and obligating the appropriated funds in the District's budget to pay for the project.

Initially, plaintiff Michuda asserts that its case involves no actual controversy and is moot because the District rescinded the award of the contract to Brant, thereby asquiescing in the trial court's December 1, 1980, order and, therefore, this appeal should be dismissed. We do not agree.

■■ Where a party acts under the compulsion of and in accordance with a judgment order from which an appeal is then taken, there has been no waiver of that appeal or release of errors, the issue is not moot and the party is not estopped from prosecuting the appeal. (*Health Resources Foundation v. Department of Health* (1978), 61 Ill. App. 3d 335, 377 N.E.2d 1056, and the cases cited therein.) The District's recision of the award of the contract to Brant was done in order to comply with the trial court's order of December 1, 1980. Such recision does not render moot the issues raised on this appeal.

Defendants first contend that the trial court erred in issuing the permanent injunction (1) enjoining Brant and the District from executing any contract documents for the construction of the project and from engaging in the performance of any work on the project and (2) enjoining the District and Goldman from awarding any contract for the construction of the project to any contractor other than Michuda because (a) Brant was the lowest responsible and responsive bidder and (b) even if Brant's bid was initially defective, it contained only a minor technical defect which was corrected after the bids were submitted but prior to the award of the contract. We disagree.

All contracts in excess of $5,000 made by or on behalf of the District where the District is to expend money must be let "by free and open competitive bidding" after advertisement to "the lowest responsible bidder." (Ill. Rev. Stat. 1979, ch. 42, par. 331.3.) Furthermore, the District is "expressly authorized to establish such procedures as it deems appropriate to comply with state or federal regulations as to affirmative action and the utilization of small and minority businesses in construction and procurement contracts." (Ill. Rev. Stat. 1979, ch. 42, par. 331.3.) Pursuant to this authority, the District issued Addendum No. 1 to its invitation to bid, which included Appendix D. The relevant portions of Appendix D provided:

> "As evidence of the bidder's commitment to the achievement of the stated goal for minority and small business participation, *a list of those sub-contracts intended for award to minority and small businesses* for work to be completed and/or services or supplies to be provided *shall be submitted to the Purchasing Agent with the*

*Bids. Such lists shall be submitted on forms provided with the bidding documents.* In addition, the contractor shall furnish copies of letters of intent to all minority and small business firms listed indicating the bidders intent to sub-contract. In the event that the material submitted is determined by the Purchasing Agent to be false, fraudulent or misleading, the Purchasing Agent shall reject the proposal or the contract may be forfeited in accordance with the provisions of Article 28 of the General Conditions." (Emphasis added.)

The issue here is not whether or not Brant was a responsible bidder, but rather whether or not Brant's bid was responsive to the invitation to bid.

■■ Bids must conform to the advertised requirements of the invitation to bid. (*King v. Alaska State Housing Authority* (Alas. 1973), 512 P.2d 887; *Application of Glen Truck Sales & Service, Inc.* (1961), 31 Misc. 2d 1027, 220 N.Y.S.2d 939; *Township of Hillside v. Sternin* (1957), 25 N.J. 317, 136 A.2d 265; *Sanitary District v. McMahon & Montgomery Co.* (1903), 110 Ill. App. 510.) Although a "minor" variance does not require rejection of the proposal (*King* and the cases cited therein), a "material" variance will require rejection of the proposal. (*King* and the cases cited therein.) A bid which contains a material variance is an unresponsive bid and may not be corrected after the bids have been opened in order to make it responsive (*City of Chicago v. Mohr* (1905), 216 Ill. 320, 74 N.E. 1056.) The test of whether a variance is material is whether it gives a bidder a substantial advantage or benefit not enjoyed by other bidders. (*King; In re Application of Gottfried Baking Co.* (1964), 45 Misc. 2d 708, 257 N.Y.S.2d 833; *Application of Glen Truck Sales & Service, Inc.* (1961), 31 Misc. 2d 1027, 220 N.Y.S.2d 939.) "Every element which enters into the competitive scheme should be required equally for all and should not be left to the volition of the individual aspirant to follow or disregard and thus to estimate his bid on a basis different from that afforded the other contenders." *Hillside Township v. Sternin* (1957), 25 N.J. 317, 322-23, 136 A.2d 265, 268.

In *Rossetti Contracting Co. v. Brennan,* (7th Cir. 1974), 508 F.2d 1039, Rossetti Contracting Co., Inc. (Rossetti), the apparent low bidder on a federally assisted construction contract, failed to submit with his bid the appropriate commitment (Appendix A) for minority hiring as required by the invitation to bid. After the bids were opened, Rossetti tendered an amended Appendix A correcting the defect in its prior submission. Rossetti's bid was found to be unresponsive, and the contract was to be awarded to the second lowest bidder. Rossetti instituted suit and the United States District Court for the Northern District of Illinois found that the error in Rossetti's initially submitted Appendix A was

minor and that Rossetti was in current compliance with the requirements of the invitation to bid. It ordered the acceptance of Rossetti's amendment, found that Rossetti's bid was responsive and enjoined the granting of the award of the contract to any party other than Rossetti. The United States Court of Appeals for the Seventh Circuit reversed and found that the language in the invitation to bid regarding the submission of an Appendix A by each bidder clearly made submission of an appropriate Appendix A a matter of responsiveness. The court also found that the defect in Rossetti's original Appendix A was not a minor error or defect which could be waived or corrected after the bids were opened even though the defect did not go to the price, quantity or quality of the services. The court noted that if a bidder were permitted to correct a deficiency in Appendix A after the opening of the bids the effect would be to permit a bidder to step away from the matter by simply failing to supply the omission and that the operation of the sealed competitive bidding system would thereby be impaired. See also *Northeast Construction Co. v. Romney* (D.C. Cir. 1973), 485 F.2d 752.

■■ We find that the reasoning and holding of the *Rossetti* case should be applied to the case at bar. Appendix D sets forth a mandatory requirement that each bidder submit a Goal Disclosure Form listing subcontracts intended for award to minority and small businesses as evidence of the bidders commitment to the goal of minority and small business participation in the project. Brant's Goal Disclosure Form indicated only its intent to comply with the requirements of the invitation to bid set forth in Appendix D. We find that the variance between Brant's bid and the invitation to bid was a material one because it gave Brant a substantial advantage or benefit not enjoyed by the other bidders. Brant's submission of its Goal Disclosure Form approximately one month after the bids were opened gave it the advantage of negotiating with minority subcontractors after it had submitted the apparent low bid. Because Brant's bid as initially submitted to the District was unresponsive and could not be amended after the bids were opened in order to make it responsive, the District improperly awarded the contract for the project to Brant.

Accordingly, we affirm that part of the permanent injunction which enjoined Brant and the District from executing any contract documents for the construction of the project and from engaging in the performance of any work on the project. We note that this part of the permanent injunction relates solely to the proposal submitted by Brant to the District on September 9, 1980, with reference to the project described as Contract 78—208—2P. It can have no effect on any bid which may be submitted by Brant upon any readvertisement of the project by the District.

The District and Goldman contend that the trial court erred in finding that defendant Goldman had abused his discretion in rejecting all

bids and in granting the issuance of a writ of *mandamus* directing the District to award the contract for the project to Michuda. We agree.

A writ of *mandamus* commands for the officer or body to whom it is directed to perform some specific duty to which the petitioner is entitled by right. (*Holland v. Quinn* (1978), 67 Ill. App. 3d 571, 385 N.E.2d 92; *People ex rel. Rappaport v. Drazek* (1975), 30 Ill. App. 3d 310, 332 N.E.2d 532.) Where performance of an official act involves the exercise of judgment or discretion, the act is not subject to review or control by *mandamus*. (*Holland v. Quinn; People ex rel. Rappaport v. Drazek*.) It has been stated that *mandamus* will lie to prevent discretionary power from being exercised unreasonably or arbitrarily and so abused as to produce manifest injustice. (*People ex rel. Shell Oil Co. v. City of Chicago* (1972), 9 Ill. App. 3d 242, 292 N.E.2d 84; *People ex rel. Collins v. Young* (1967), 83 Ill. App. 2d 312, 227 N.E.2d 524.) However, a showing of abuse of discretion is not by itself the only necessary condition for *mandamus* relief; a clear legal right and a clear legal duty must also be established before *mandamus* will lie. (*Arthur Weil & Co. v. Board of Education* (1977), 49 Ill. App. 3d 649, 364 N.E.2d 542.) Furthermore, *mandamus* should not be used in doubtful cases; if there is evidence to support the official action, the writ must be refused. *Holland v. Quinn; Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 331 N.E.2d 380.

The purchasing agent of the District has the statutory authority to reject "any and all bids" received in response to an advertisement if (1) the bidders are not deemed responsible, (2) the character or quality of the services, supplies, materials, equipment or labor do not conform to requirements, or (3) the public interest may be better served thereby. Ill. Rev. Stat. 1979, ch. 42, par. 331.12.

■■ Under the statutory authority, the District's purchasing agent had the discretionary power to reject all the bids submitted. We do not find that that discretion was abused and therefore find that the trial court erred in issuing the writ of *mandamus* directing the District to award the contract for the project to Michuda. Furthermore, in the record before us we find no proof that defendants were under a clear legal duty to award the contract to Michuda. We also find no proof in the record before us that Michuda had a clear right to receive this contract. See *Arthur Weil & Co. v. Board of Education* (1977), 49 Ill. App. 3d 649, 364 N.E.2d 542.

Accordingly, we reverse the trial court's issuance of the writ of *mandamus* and that part of the permanent injunction which enjoined the District and Goldman from awarding any contract for the construction of the project to any contractor other than Michuda.

Affirmed in part; reversed in part.

CAMPBELL, P.J., and GOLDBERG, J., concur.