WILLIAMS BROTHERS CONSTRUCTION, INC., Plaintiff-Appellant, v. THE PUBLIC BUILDING COMMISSION OF KANE COUNTY *et al.*, Defendants-Appellees.

Second District   No. 2—92—0973

Opinion filed April 15, 1993.

Howard W. Feldman and J. Randall Cox, both of Feldman & Wasser, of Springfield, and James Skaar, of Smith, Landmeier & Skaar, P.C., of Geneva, for appellant.

James T. Ryan, of Ryan, Nelson & McSherry, of Arlington Heights, for appellee Ockerland Construction Co.

Stephen Sullivan, of Batavia, for appellees Public Building Commission of Kane County and Board of Trustees of Waubonsee Community College.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

This case involves a construction project sponsored by the Public Building Commission of Kane County (Commission) for the benefit of the Board of Trustees of Waubonsee Community College (Board). Acting on the Board's recommendation, the Commission awarded the contract for the project to the low bidder, Ockerlund Construction Company (Ockerlund), pursuant to section 20 of the Public Building Commission Act (Building Commission Act) (Ill. Rev. Stat. 1991, ch. 85, par. 1050). Plaintiff, Williams Brothers, Inc., the next-lowest bidder, sued to enjoin the award, arguing that Ockerlund's bid was nonresponsive because Ockerlund failed to list its proposed subcontractors on the bid form. Plaintiff petitioned for a preliminary injunction. After a hearing, the trial court refused to grant a preliminary injunction against the award to Ockerlund.

On interlocutory appeal (134 Ill. 2d R. 307(a)), plaintiff argues that the trial court abused its discretion in refusing the preliminary injunction. Plaintiff argues that it made a sufficient case that Ockerlund's failure to list its subcontractors was a material and nonwaivable variance from the bid specifications. Therefore, plaintiff concludes, it met the requirements for maintaining the status quo by a preliminary injunction.

We hold that, under the facts of this case, the trial court did not err in denying the preliminary injunction. On the limited record we face, we cannot say that the trial court erred in upholding the Board's conclusion that Ockerlund's failure to list its subcontractors with the bid was at worst a nonmaterial variance which did not make Ockerlund's bid nonreponsive.

Plaintiff's complaint, filed July 30, 1992, alleged the following: The Commission is a municipal corporation organized under the Public Building Commission Act (Ill. Rev. Stat. 1991, ch. 85, par. 1031 *et*

*seq.*). The Commission advertised for bids on the project. As part of the public bidding process, the Commission issued bidding documents which, according to plaintiff, required each contractor to list the names of the subcontractors it would use if it received the bid. Ockerlund submitted a bid form which left blank the section entitled "List of Subcontractors." Plaintiff's bid listed its anticipated subcontractors. On or about July 16, 1992, the Commission indicated that it would award the contract to Ockerlund.

The complaint alleged that the award of the contract to Ockerlund was contrary to law because Ockerlund's failure to list its subcontractors gave it an unfair advantage over other bidders, thus making Ockerlund's bid nonresponsive and requiring the Commission to reject the bid. Plaintiff alleged that it had met all the requirements for injunctive relief. Also, plaintiff sought a declaration of the parties' rights. Plaintiff attached copies of its completed bid form, Ockerlund's completed bid form, and a letter of July 17, 1992, from the Commission's attorney to plaintiff's counsel.

On the bid form, the Board "reserve[d] the right to reject any or all bids, *to waive any irregularities in the bidding* or to accept the bid that in their judgment will be for their best interest." (Emphasis added.) The letter of July 17, 1992, stated that the Commission believed that Ockerlund's failure to list subcontractors in its bid was a formal defect that the Commission could waive, as the omission appeared not to give Ockerlund an unfair advantage over other bidders. The letter noted that, before Ockerlund's bid was accepted, Ockerlund had "provided a list of subcontractors in accordance with the bid specs."

On July 30, 1992, plaintiff petitioned for a preliminary injunction. Plaintiff asked the court to enjoin the Commission from entering into a contract with Ockerlund; to enjoin Ockerlund from working on the project; and to enjoin the Commission from awarding the job to anyone other than plaintiff.

We now summarize the evidence presented at the hearing on plaintiff's petition. Plaintiff called John Murphy, the treasurer and vice-president of Waubonsee Community College. Murphy accepted the Ockerlund bid on behalf of the college, which "recommended the bid to the Commission." As of the hearing, no contract had been entered into with Ockerlund, although the company had a trailer on the site. Murphy admitted that work could not begin until there was a contract. However, the Board had issued Ockerlund a purchase order with regard to the project, which was admitted into evidence. This order, dated July 17, 1992, was issued on the Commission's authority.

Murphy acknowledged that it was a requirement of the bid document that a bidder complete the portion of the bid document calling for the listing of subcontractors. He also conceded that Ockerlund did not meet that requirement in submitting its bid, a fact of which Murphy became aware on the day the bidding opened. Murphy could not say why Ockerlund's bid did not list any subcontractors. Within about a week of submitting its bid, Ockerlund submitted a list of its proposed subcontractors.

The Board desired that the project be completed by August 1993 for the convenience of students and college personnel. Murphy explained that the Board accepted Ockerlund's bid, despite the failure to list contractors, because the Board was interested only in the identity of the contractor and not those of any subcontractors. The Board included the provision for listing subcontractors because the architect recommended this "boilerplate." The Board accepted Ockerlund's bid as the result of discussions with the architect and counsel for the Commission.

Murphy knew no reason to require bidders to list their subcontractors. He knew of no advantage that Ockerlund received from the Commission's waiver of this requirement.

Thomas J. Williams, plaintiff's president and majority shareholder, testified that he had 37 years of experience in the construction industry and 35 years' experience in bidding on construction projects. In plaintiff's 18 years of corporate existence, Williams was primarily responsible for submitting bids on plaintiff's behalf.

According to Williams, a contractor can obtain a distinct competitive advantage by failing to name its subcontractors when submitting a bid. The omission of subcontractors enables a contractor to engage in "bid shopping." After the bids are open, such a contractor can "go to anybody in the country and better the prices they used and purchase it from those people." Refraining from naming subcontractors with the bid gives a contractor greater leverage in negotiating prices from subcontractors after it receives the bid; this greater leverage, in turn, makes it easier to submit the low bid in the first place. Here, for example, Ockerlund would be able to look at all the bids submitted by other contractors, approach the listed subcontractors, "and say, we've got the job, what's your best price." However, Williams did not know if Ockerlund actually saw any of the other bids.

Plaintiff's bid listed all prospective subcontractors. Williams acknowledged that lining up subcontractors is a very fluid process. Normally, plaintiff did not sign contracts with subcontractors before submitting its bid. Thus, after receiving an award, plaintiff would be free

to pressure a subcontractor into lowering its price as a condition of staying with the project. However, Williams stated that if he listed a subcontractor in a bid, he would give that subcontractor the job. He stated further that plaintiff did not pressure subcontractors to renegotiate prices on its successful bids. Williams added that generally a party inviting bids cares about a contractor's choice of subcontractors, as the party desires to avoid using unqualified or insolvent subcontractors.

Williams stated that if plaintiff did not receive the contract, it would lose the anticipated profit and would have to lay off 10 to 12 key employees.

Mark Anderson, Ockerlund's vice-president, testified that he had represented Ockerlund in the bidding process for about eight years and had five or six years' prior bidding experience. Altogether, he had been involved in preparing about 200 bids. Of these bids, possibly as many as 10% required or provided space for listing subcontractors. According to Anderson, it is normal for a contractor not to have signed any contracts with subcontractors when it submits its bid.

Anderson acknowledged that Ockerlund did not list its subcontractors in its bid in this case. He stated that no one told him in advance that such a listing was mandatory, or he would have provided one. About a week after the bidding opened, at the Board's direction, Anderson submitted a list of subcontractors. Later, Ockerlund received the purchase order.

Anderson stated that successful contractors frequently try to "refine" the bids of their subcontractors. Also, for various reasons, subcontractors sometimes back out of agreements with contractors. Thus, on many occasions when Anderson listed subcontractors with his bid, his company eventually used one or more subcontractors not originally listed. Whether or not it can negotiate with subcontractors, Ockerlund always honors its bid, which, as here, customarily requires payment of a bid bond.

Anderson disagreed with Williams' assertion that a contractor that failed to list its subcontractors in a bid could thereby gain an advantage over competitors who listed their subcontractors. According to Anderson, if a bid that lists proposed subcontractors does not specify the amount of money involved in each subcontract, there is still room for negotiation between the contractor and the subcontractor. Anderson added that nobody from Ockerlund had ever looked at any of the bids or bid forms from the other bidders. Also, in the period after Anderson realized that Ockerlund was the apparent low bidder but before Ockerlund submitted its list of subcontractors, Ockerlund

did not decrease any of the price quotations from its prospective subcontractors.

The trial judge denied plaintiff's request for a preliminary injunction. Noting that the actual bid instructions were not in evidence, the judge concluded that plaintiff had presented no evidence that Ockerlund's failure to submit a list of subcontractors with its bid was a material variance from the bid requirements. Without evidence that the alleged defect made Ockerlund's bid unresponsive, the court saw no reason to enjoin the Commission from waiving any claimed irregularity in the bid.

On appeal, plaintiff argues that the trial court abused its discretion in refusing to grant a preliminary injunction. As it did at the trial level, plaintiff maintains that the omission of a required list of subcontractors from a bid cannot be considered a minor or inconsequential variance because such an omission permits the nonconforming bidder to "bid shop," an advantage denied to bidders who follow the requirement. Plaintiff insists that regardless of whether a nonconforming bidder actually benefits from such an unfair advantage, the possibility of such an unfair advantage is enough to make a bid such as Ockerlund's unresponsive to the bid requirements. Thus, in plaintiff's view, it made an adequate showing that Ockerlund's failure to list its subcontractors was a material variance that necessitated rejection of the Ockerlund bid.

■ Before turning to the merits of the appeal, we address Ockerlund's motion to strike portions of plaintiff's statement of facts. Ockerlund argues that certain statements in plaintiff's appellate brief are unsupported by the record (see 134 Ill. 2d R. 341(e)(6)). This court has taken the motion with the case. Insofar as plaintiff has made factual statements unsupported by the record, this court, after its own review of the record, will disregard such statements. To this extent, Ockerlund's motion is granted. See *Woodard v. Krans* (1992), 234 Ill. App. 3d 690, 698-99.

We now consider plaintiff's argument that the trial court abused its discretion in denying plaintiff a preliminary injunction. A reviewing court will not reverse a trial court's decision to grant or deny a preliminary injunction unless it is clear that the trial court abused its discretion. (*Reinhardt Printing Co. v. Feld* (1986), 142 Ill. App. 3d 9, 15.) A preliminary injunction is an extraordinary remedy to be used where an extreme emergency exists and serious harm would result without the injunction. (*Label Printers v. Pflug* (1991), 206 Ill. App. 3d 483, 490.) However, because the purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits,

the plaintiff does not carry the same burden of proof that is required to prevail on the ultimate issue. *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 386.

To obtain a preliminary injunction, a party must establish that (1) it possesses a clearly ascertained right in need of protection; (2) it will suffer irreparable injury without the injunction; (3) there is no adequate remedy at law; and (4) there is a likelihood of success on the merits. (*L S B Z, Inc. v. Brokis* (1992), 237 Ill. App. 3d 415, 425.) Also, the trial court must conclude that the balance of hardships to the parties supports the grant of preliminary relief. (*Armstrong v. Crystal Lake Park District* (1985), 139 Ill. App. 3d 991, 996.) To demonstrate a likelihood of success on the merits, the movant need not make out a case which would necessarily require relief at a final hearing. "Rather, a party need only raise a fair question as to the existence of the rights claimed, [and] lead the court to believe that it will probably be entitled to the relief sought if the proof sustains the allegations." *Armstrong*, 139 Ill. App. 3d at 997.

We conclude that, on the record before us, the trial court did not abuse its discretion in concluding that plaintiff did not establish a likelihood of success on the merits. There is no dispute that Ockerlund omitted any list of subcontractors from its bid. However, the relevant statute does not require such a listing; without the invitation to bid in evidence, either here or at the trial level, we cannot say that plaintiff has raised a fair question that the submission of a subcontractor list contemporaneously with the bid was a requirement for bidding on the project in this case. Assuming *arguendo* that this was a requirement, we believe the trial court did not err in finding that the Commission acted within its discretion in deciding that this requirement was a waivable formality. Thus, even given the reduced burden needed to obtain preliminary injunctive relief, we conclude that the trial court properly found that plaintiff did not meet that burden.

■■ We agree with the parties that the following basic principles guide our decision:

> "Bids must conform to the advertised requirements of the invitation to bid. [Citations.] Although a 'minor' variance does not require rejection of the proposal [citation], a 'material' variance will require rejection of the proposal. [Citation.] A bid which contains a material variance is an unresponsive bid and may not be corrected after the bids have been opened in order to make it responsive [citation]. The test of whether a variance is material is whether it gives a bidder a substantial advantage or benefit not enjoyed by other bidders." *Leo Michuda & Son*

*Co. v. Metropolitan Sanitary District of Greater Chicago* (1981), 97 Ill. App. 3d 340, 344.

See also 10 E. McQuillin, Municipal Corporations §29.65, at 461-70 (3d ed. 1990).

An agency of local government has broad discretion in awarding a contract, and a court will defer to the agency's choice absent a palpable abuse of discretion or manifest injustice. (*Hallett v. City of Elgin* (1912), 254 Ill. 343, 346-47; *Burt v. Board of Education of Coal City Community Unit School District No. 1* (1985), 132 Ill. App. 3d 393, 396; *Cardinal Glass Co. v. Board of Education of Mendota Community Consolidated School District No. 289* (1983), 113 Ill. App. 3d 442, 448.) This discretion extends to the determination of whether a given bid is responsive. (*Chris Berg, Inc. v. State Department of Transportation & Public Facilities* (Alaska 1984), 680 P.2d 93, 94; *Taylor Bus Service, Inc. v. San Diego Board of Education* (1987), 195 Cal. App. 1331, 1342-43, 241 Cal. Rptr. 379, 385-86; *In re C.K. Rehner, Inc.* (1984), 106 A.D. 2d 268, 269, 483 N.Y.S.2d 1, 2.) Courts will defer to an agency's determination of responsiveness as long as that determination has a reasonable basis. *Chris Berg*, 680 P.2d at 94; see also *Vikonics, Inc. v. United States* (D.D.C. 1990), 749 F. Supp. 315, 318 (court's review of agency decision in award of public contract is limited to determining whether the agency's action was in accord with applicable statutes and had a rational basis); *Taylor Bus*, 195 Cal. App. 3d at 1341, 241 Cal. Rptr. at 385 (burden is on appellant to demonstrate that agency decision is not supported by substantial evidence); *State v. Weisz & Sons, Inc.* (Wyo. 1986), 713 P.2d 176, 186 (agency's determination of whether a bid has met requirements is an act of discretion which a court will not enjoin absent illegality, unreasonableness, or arbitrariness).

■ Plaintiff argues that it made an adequate showing that Ockerlund's failure to list its subcontractors at the time of submitting its bid was a violation of the bidding requirements. However, the bidding instructions themselves have never been introduced into evidence, and the relevant statute does not require a bidder to list its prospective subcontractors at the time of submitting the bid (see Ill. Rev. Stat. 1991, ch. 85, par. 1050). Just as plaintiff as movant for an injunction had the burden to introduce sufficient evidence at the trial level, so plaintiff as appellant has the burden to present a record on appeal sufficient to support its claim of error, and any doubts arising from the incompleteness of the record will be construed against plaintiff. *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92.

Such evidence as was introduced at the hearing is conflicting. The correspondence from the Commission's attorney to plaintiff's attorney, the bid form itself, and the Board's late request to Ockerlund for a list of subcontractors may have permitted an inference that the invitation to bid required the contemporaneous submission of a subcontractor list. However, Ockerlund's vice-president, Mark Anderson, testified without contradiction that he was not informed in advance of submitting his company's bid that a list of subcontractors was required. He also testified that such a requirement is a relative rarity in public construction bid invitations. This testimony, along with plaintiff's unexplained failure to introduce the bid requirements into evidence at the trial level, allowed the trial court to infer that the requirements of the invitation to bid did not include that bidders contemporaneously submit a list of prospective contractors. The testimony of John Murphy that the Board regarded the standard bid form's space for subcontractors as "boilerplate" which the Board approved with no independent thought on the matter also supports the later inferences.

As the evidence provided the trial court with a reasonable basis to conclude that a contemporaneous list of subcontractors was not among the bidding requirements, we cannot say that the trial court abused its discretion in reaching this conclusion. As plaintiff failed to show that Ockerlund was guilty of *any* failure to conform to the bid instructions, it follows *a fortiori* that plaintiff also failed to carry its burden to show that Ockerlund was guilty of a material nonconformity that vitiated its bid. Thus, even given that the standard of proof for a preliminary injunction is less onerous than that for a judgment on the ultimate issue, we conclude that the trial court did not err in holding that plaintiff failed to establish a likelihood of success on the merits.

■ Even assuming that the invitation to bid required Ockerlund to provide a list of prospective subcontractors with its bid, we conclude that the Commission did not abuse its discretion in determining that Ockerlund's failure to comply with this requirement was a nonmaterial variance that the Commission had the power to waive with or without an expressed waiver clause in the bid form. We review the relevant case law, including that plaintiff cites, to explain our conclusion.

We have found no Illinois opinion addressing specifically whether the failure to list prospective subcontractors at the time of submitting a bid is a material variance from the bid requirements or merely a minor and waivable variance. We are aware that several other jurisdic-

tions have held that such a failure is a material variance that vitiates the bid. (*Neilson & Co. v. Cassia & Twin Falls County Joint Class A School District 151* (1975), 96 Idaho 763, 766, 536 P.2d 1113, 1115-16; *Prismatic Development Corp. v. Somerset County Board of Chosen Freeholders* (1989), 236 N.J. Super. 158, 164-65, 564 A.2d 1208, 1212; *William C. Logan & Associates v. Leatherman* (1986), 290 S.C. 400, 402, 351 S.E.2d 146, 147.) However, in each of these opinions, the court stressed that the relevant statute required bidders to list their subcontractors. Thus, awarding a contract to a bidder that did not list its subcontractors would violate the controlling statute. As one court noted, an agency has no power to waive compliance with a requirement imposed by the legislature. (*Neilson & Co.*, 96 Idaho at 766, 536 P.2d at 1116.) Here, however, there is no contention that the Commission has attempted to waive or disregard a legislative mandate.

Plaintiff argues that this case is controlled by *Michuda*. However, we believe *Michuda* is distinguishable on its facts. In *Michuda*, the second-lowest bidder on a construction project obtained an injunction forbidding the lowest bidder and the agency from executing a contract for the project. The basis of the injunction was that the lowest bidder's bid was not responsive because it failed to include a list of minority and small business subcontractors. The agency's bid instructions explicitly required each bidder to submit such a list. (*Michuda*, 97 Ill. App. 3d at 342.) Affirming the trial court's action in this respect, the appellate court held that the variance between the agency's instructions and the low bidder's bid was material because it gave the low bidder the unfair competitive advantage of "negotiating with minority subcontractors after it had submitted the apparent low bid." *Michuda*, 97 Ill. App. 3d at 345.

The *Michuda* court analogized the case to *Rossetti Contracting Co. v. Brennan* (7th Cir. 1975), 508 F.2d 1039, in which the low bidder on a federally assisted construction contract failed to submit an explicitly required statement of the bidder's plans to conform to a Federal affirmative action program. The Federal appellate court reversed a grant of declaratory and injunctive relief to the low bidder and upheld a determination by the Department of Labor that the bid at issue was not responsive to the invitation and could not be corrected after the submission of the bid. (*Rossetti*, 508 F.2d at 1046-47.) Recognizing the deference due an agency's decision in awarding a contract, the appellate court also noted that the affirmative action plan itself stated explicitly that a bidder who failed to comply with the disclosure requirement would be deemed nonresponsive and could not be awarded the contract. (*Rossetti*, 508 F.2d at 1043-44.) Another court has rea-

soned persuasively that the failure to comply with an explicit and detailed affirmative action requirement is a material variance which may not be corrected after the bid is submitted, as to allow waiver of the requirement would enable a bidder to gain an unfair advantage over competitors by saving itself the cost of complying with the required affirmative action specifications. *In re Appeal of Associated Sign & Post, Inc.* (Ind. App. 1985), 485 N.E.2d 917, 925.

We agree with plaintiff that nothing in *Michuda* limits its reasoning to cases involving requirements for hiring minority subcontractors. The court stressed that " '[e]very element which enters into the competitive scheme should be required equally for all and should not be left to the volition of the individual aspirant to follow or disregard and thus to estimate his bid on a basis different from that afforded the other contenders.' " (*Michuda*, 97 Ill. App. 3d at 344, quoting *Hillside Township v. Sternin* (1957), 25 N.J. 317, 322-23, 136 A.2d 265, 268.) Nonetheless, we cannot say that the Commission abused its discretion in determining that Ockerlund's failure to submit a list of subcontractors with its bid was not a material variance of the type present in *Michuda* or *Rossetti*.

As we have noted, the evidence is ambiguous as to whether the invitation to bid required the contemporaneous submission of a list of subcontractors at all. Assuming that such was the case, both the Commission and the trial court had adequate reason to conclude that this requirement was waivable.

The Board's own agent testified that the Board added the provision for listing subcontractors as "boilerplate" and did not consider what purpose the provision might serve. There was evidence at the hearing that a contractor who filled in this part of the form would still be able to place pressure on subcontractors to adjust their prices. Ockerlund never had the opportunity to see the other bids submitted, undercutting the premise of plaintiff's argument that it secured an unfair advantage. Also, the failure to submit a list of subcontractors, at least in the case at bar, appears not to provide a bidder with the sort of unfair cost advantage that might be reaped from ignoring an affirmative action requirement. Finally, even where a material defect in a bid may not be corrected after submission, the rapidity with which a defect is cured may be probative of whether there was any likelihood of giving the bidder an unfair competitive advantage. See *In re Varsity Transit, Inc. v. Board of Education* (1987), 130 A.D.2d 581, 581, 515 N.Y.S.2d 520, 521.

We recognize that certain courts and commentators share plaintiff's concerns about the dangers of "bid shopping." (See, *e.g., Mitch-*

*ell v. Siqueiros* (1978), 99 Idaho 396, 402, 582 P.2d 1074, 1081 (Bistline, J., specially concurring); *Prismatic Development*, 236 N.J. Super. at 165, 564 A.2d at 1211-12; Comment, *Bid Shopping & Peddling in the Subcontract Construction Industry*, 18 UCLA L. Rev. 389 (1970).) In the case at bar, however, there is no evidence that the alleged irregularity involved posed a significant risk to the public's interest in a fair, competitive bidding system. At the very least, we cannot say that the Commission or the trial court was compelled to find that there was a variance serious enough to require rejection of Ockerlund's bid. Absent any legislative judgment compelling us to do so, we decline plaintiff's invitation to hold that the failure to list subcontractors in a bid form is a *per se* material defect that necessitates rejection of a bid.

Because we conclude that the trial court properly found that plaintiff did not establish a likelihood of success on the merits, we need not consider whether the trial court had additional grounds to deny the preliminary injunction.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

GEIGER and DOYLE, JJ., concur.