536 P.2d 1113

**NEILSEN & CO., a co-partnership consisting of Craig Neilsen, et al., Plaintiff-Appellant,**

**v.**

**CASSIA AND TWIN FALLS COUNTY JOINT CLASS A SCHOOL DISTRICT 151, a political subdivision of the State of Idaho, et al., Defendants-Respondents.**

**No. 11675.**

Supreme Court of Idaho.
June 13, 1975.

Donald J. Chisholm, of Goodman, Duff & Chisholm, Rupert, for plaintiff-appellant.

Herman E. Bedke, Burley, John B. Kugler, Pocatello, for defendants-respondents.

DONALDSON, Justice.

In November, 1973, the Burley Junior High School was destroyed by fire. Plan specifications for a new building were drawn by Richardson and Richardson, architects, and bids were opened April 3, 1974, pursuant to appropriate Idaho statutes. Defendant-respondent Leslie Mitchell, doing business as Mitchell Construction Co., Inc., hereinafter referred to as "Mitchell," submitted the lowest bid, naming as plumbing and mechanical subcontractor, J. & R. Plumbing and Heating, Idaho Falls. Plaintiff-appellant Neilsen and Co., a partnership, hereinafter referred to as "Neilsen," submitted the second lowest bid, naming Home Plumbing and Heating Co., Twin Falls, as subcontractor for the above mentioned contracts, and in the event federal funds were utilized,[1] J. & R. Plumbing and Heating.

At the formal bid opening, Neilsen argued that Mitchell's sole use of J. & R. Plumbing and Heating as subcontractor rendered its bid unresponsive and void. The matter was reviewed by defendant-respondent Cassia and Twin Falls County Joint Class A School District 151, hereinafter referred to as the "School Board," and determination was made that the Mitchell bid was proper. The contract was executed and bond was furnished. Appellant then brought action in the district court for injunction and/or writ of prohibition against the Board. The district court denied appellants' relief. However, the appellant was given permission to amend and pray for damages in the event that decision was appealed and reversed.

The appellant assigns error to the district court's dismissal of his writ of prohibition forbidding the School Board from entering into or performing a contract with Mitchell. Error is also assigned to the district court's refusal to enjoin both the School Board and Mitchell from entering said contract or allowing Mitchell to commence work and derive benefit therefrom. Since both assignments are premised upon the contention that Mitchell's bid was unresponsive and void, we now consider that issue.

I.C. § 67–2310[2] provides in part where a general contractor fails to name a properly

1. Plan specifications contained the following language: "This Public Works project is not financed in whole or in part by federal-aid funds." The import of this is that I.C. 54–1902 allows only licensed contractors and subcontractors to bid public works projects not financed with federal funds.

2. "Subcontractors to be listed on bid of general contractor.—Hereafter, before the state of Idaho, the separate counties, cities, towns, villages or school districts within the state of Idaho shall let contracts for the construction, alteration or repair of any and all buildings, improvements or public works, and such construction, alteration or repair requires plumbing, heating and air-conditioning work, or electrical work, *the general contractor shall be required to include in his bid the name, or names and address, or addresses, of the subcontractors who shall, in the event the contractor secures the contract, subcontract the plumbing, heating and air-conditioning work, and electrical work under the general contract;* provided, however, that this act shall not apply to the construction, alteration or

licensed mechanical subcontractor, the bid of the general contractor is rendered unresponsive and void. I.C. § 33–601[3] permits a public works contract to be awarded only to the lowest responsible bidder. It appears self-evident that a bid determined unresponsive and void under I.C. § 67–2310 cannot qualify as a responsible bid under I.C. § 33–601. Therefore, in order for the School Board to have properly executed the contract under I.C. § 33–601, provisions of I.C. § 67–2310 must have been satisfied.

■ The respondents argue the above provisions were met since J. & R. Plumbing and Heating held a certificate of competency in plumbing as defined by I.C. § 39–2716(a). We believe more is required, for the import of I.C. §§ 54–1901—1924 requires a subcontractor not only to be licensed for a general classification of work, but also to hold a specific license from the state based upon type, scope and responsibility of operation.

■ I.C. § 54–1904[4] specifically sets forth the classificatory license scheme governing public works contractors. At all times pertinent, J. & R. Plumbing and Heating was holder of a "AA" license which entitled them to execute contracts for public works involving an estimated cost of not more than $250,000.00. The contract in question involves $465,331.00. I.C. § 54–1904[5] states that a contractor must hold a "AAA" license in order to execute contracts involving an estimated cost of more than $250,000.00. Therefore, sole use of a "AA" licensed subcontractor in the instant case was improper. Mitchell's bid solely listing J. & R. Plumbing and Heating as subcontractor was in violation of I.C. § 54–1904. As such, the provisions of I.C. § 67–2310 were not satisfied and

repair of public buildings under the jurisdiction of the board of regents of the University of Idaho; further that this act shall have no application to the preparation and submission of plans and specifications pursuant to section 50–316, Idaho Code. *Failure to name subcontractors as required by this section shall render any bid submitted by a general contractor unresponsive and void. Subcontractors named in accordance with the provisions of this section must possess an appropriate license or certificate of competency issued by the state of Idaho covering the contractor work classification in which the subcontractor is named.*" (emphasis supplied)

3. "2. To contract for the acquisition, purchase, construction or repair of any school building, other property, or equipment, necessary for the operation of the school district. *No such contract shall be executed which entails the expenditure of two thousand five hundred dollars ($2,500) or more without notice first being given by posting, and publishing twice in the manner required by section 33–401, Idaho Code. The board of trustees may let the contract to the lowest responsible bidder, or reject any bid, or reject all bids and post and publish notice for bids, as before.* If, thereafter, no satisfactory bid is received, the board may proceed under its own direction, subject to the approval of the state board of education. * * *." (emphasis supplied)

4. "I.C. § 54–1904 * * * For the purpose of licensing public works contractors under

this act the board may adopt rules and regulations necessary to determine the classification according to their responsibility, and the type and scope of the operations of a licensed contractor to those in which he is classified and qualified to engage as in this act provided.

Class 'AAA' license. Any contractor whose qualifications, ability and responsibility to execute contracts for public works involving an estimated cost of more than $250,000 may, upon his application and the payment of a license fee of not to exceed $125, be granted a Class 'AAA' license and be so classified by the board in accordance with the provisions of this act. The holder of a Class 'AAA' license shall be entitled to engage in the public works contracting business in the state as provided in said license. The renewal fee for a Class 'AAA' license shall not exceed $125.

Class 'AA' license. Any contractor whose qualifications, ability and responsibility to execute contracts for public works involving an estimated cost of not more than $250,000 may, upon his application and the payment of a license fee of not to exceed $100, be granted a Class 'AA' license and be so classified by the board in accordance with the provisions of this act. The holder of a Class 'AA' license shall be entitled to engage in the public works contracting business in the state as provided in said license. The renewal fee for a Class 'AA' license shall not exceed $100. * * *"

5. *Id.*

the bid must be considered unacceptable under I.C. § 33–601.

■ The School Board, at its option, should have either rejected the Mitchell bid and accepted the lowest responsible bid or readvertised and sought new bids on the project. Clearly, the School Board had no right to waive compliance with I.C. § 67–2310. Provisions affecting competitive bidding on public works were initially established to invite effective competition, prevent fraud, and to secure subcontractors who were capable of satisfactorily performing the work and furnishing supplies at the lowest overall cost. Only through application of the entire scheme can these initial purposes be reached. I.C. § 67–2310 cannot be considered to have been passed solely for regulation and benefit of industrial contractors, and therefore is binding on the School Board.

■ The respondents contend that I.C. § 67–2310 is constitutionally offensive because it violates the equal protection laws of the United States and Idaho Constitutions. In only specifying electrical and mechanical contractors, arbitrary classification is alleged. We find this argument unpersuasive in that the classification is reasonably related to the purpose of the statute.

The State has a legitimate public interest in controlling electrical and mechanical subcontractors because public health and safety is greatly affected by skilled application of these trades. By promoting economic stability for public works subcontractors, the legislature is assuring that competent personnel will be available to perform electrical and mechanical work on the projects in question. I.C. § 67–2310 further helps to provide a healthful competitive climate in these trades.

■ The appellant, in amended pleadings, now seeks relief only for damages incurred in bidding the contract. Damages should be awarded. The district court, in finding for the respondents, entered no findings of fact concerning damages. We

therefore remand the case to the district court for determination of damages.

Reversed and remanded to the district court for further proceedings in accordance with the views expressed herein.

Costs to appellants.

McQUADE, C. J., and McFADDEN, SHEPARD, and BAKES, JJ., concur.