580 P.2d 412

**McKAY CONSTRUCTION COMPANY, an Idaho partnership, Appellant,**

v.

**ADA COUNTY BOARD OF COUNTY COMMISSIONERS, and Whitmore Transportation Service, Inc., an Idaho Corporation, Defendants-Respondents.**

No. 12202.

Supreme Court of Idaho.

June 2, 1978.

Rehearing Denied July 17, 1978.

Vernon K. Smith, Jr., Boise, for appellant.

David H. Leroy, Ada County Pros. Atty., James E. Risch of Risch & Goss, Boise, for Ada County Com'rs.

Louis H. Cosho of Clemons, Cosho, Humphrey & Samuelson, Boise, for Whitmore Transp.

BAKES, Justice. ·

Appellant McKay Construction Company (hereinafter McKay) sought by this action to prevent respondent Whitmore Transportation Service, Inc., (hereinafter Whitmore) from performing a sanitary landfill contract awarded to Whitmore by respondent Ada County Board of County Commissioners (hereinafter county) after competitive bidding. McKay further sought to compel the county to award the contract to McKay as the lowest responsible bidder and to recover damages from the county for lost earnings. McKay asserted that relief should be granted because Whitmore failed to comply with statutory bonding and licensing requirements. The trial court dismissed McKay's petition. We reverse and remand the case for further proceedings.

I

In the fall of 1975 Ada County solicited bids for operation of the county's sanitary landfill site. The county provided a form for submitting bids that was drafted as an agreement between the county and the bidder. To bid, one merely filled in a blank indicating the monthly payment for which one would perform the sanitary landfill services and signed at the end. By executing the document, the county could contractually bind itself and the bidder of its choice to the terms set forth.

The standard bid document contained the following provision:

"5. PERFORMANCE BOND. Immediately upon the execution of this agreement the contractor shall furnish a Performance Bond for the faithful performance of this agreement, said bond to be executed by a surety company licensed by the State of Idaho and acceptable to the County and to be in an amount equal to one years payment from the County to the contract[or] and to be in effect during the term of this agreement."

Four companies submitted bids using the county's document. Whitmore had the lowest bid at $12,493 per month, and McKay submitted the next lowest bid at $18,160. On November 20, 1975, the county notified the unsuccessful bidders that it had awarded the contract to Whitmore.

The county signed the bid document on November 26. However, before the signing, the county and Whitmore amended paragraph 5 of the agreement to require that Whitmore "furnish a Performance Bond for the faithful performance of this agreement, said bond to be executed by a surety company licensed by the State of Idaho *or in some other reasonable form* and acceptable to the County." (Emphasis denotes language added to the standard bid document.)

Whitmore did not furnish a performance bond executed by a licensed surety company. Instead, Carl Whitmore, president of Whitmore, executed an "Indemnity Bond" under which Carl bound himself to indemnify Ada County against expenses or losses up to $150,000 incurred "in consequence of my [Carl's] failure to perform" the contract between the county and Whitmore. The agreement provided that in order to secure the promised indemnification, Carl had deposited time certificates aggregating $150,000 in local banks and that the certificates were endorsed as follows: "Payee may not negotiate the principal balance deposited herein without the written consent and endorsement of Ada County, Idaho." Carl did in fact deposit silver savings certificates amounting to $150,000 with Idaho First National Bank.[1] and the bank notified the

---

1. Two of the certificates deposited, together amounting to $145,000, were in the names of both Carl E. Whitmore and Margaret Whitmore, Carl's wife. A $3,000 certificate was payable to Carl or his daughter Janice, and a $2,000 certificate was payable to Margaret or

county commissioners that it would hold the certificates until the county advised it regarding disposition of the funds. In the meantime, the interest accruing on the time certificates was to be paid to Carl.

Whitmore did not hold a public works contractor's license when it bid for the sanitary landfill contract or when the county awarded and executed the contract. McKay, however, held a Class AAA public works contractor's license.

On November 26, 1975, McKay petitioned for an alternative writ of prohibition and for alternative writs of mandate. Alleging Whitmore's failure to provide a performance bond executed by a licensed surety and lack of a public works contractor's license, McKay prayed that Whitmore and Ada County be ordered to show cause why they should not be prohibited from proceeding further under the contract awarded to Whitmore and why that contract should not be declared null and void since Whitmore was not the lowest responsible bidder. McKay also asked that the county be ordered to show cause why the contract should not be awarded to McKay as the lowest responsible bidder.

The trial court issued a memorandum decision ruling that McKay's petition should be dismissed. The court concluded that the indemnity bond satisfied statutory requirements and that the county had discretion to accept it as a performance bond. While suggesting that operating a sanitary landfill did not necessarily require a public

works construction license, the court indicated that it need not decide that question since the statutory sanctions provided in I.C. § 53–1920 for contracting without a license did not include a declaration of the contract's invalidity. However, the court subsequently approved formal "Findings of Fact and Conclusions of Law" stating that a public works contractor's license was not required to operate a sanitary landfill.

McKay then filed a "Supplemental Petition and Complaint." McKay alleged that by failing to require Whitmore to furnish the performance bond described in the notice and instructions to bidders, the county had given Whitmore an unfair advantage. McKay sought damages for lost earnings and attorney fees. The court dismissed the supplemental petition and complaint on the ground that it alleged no cause of action.

McKay appeals from the dismissal of its original petition and its supplemental petition and complaint. Although McKay makes numerous assignments of error, we need only consider the propriety of the trial court's conclusions regarding the statutory bonding and licensing requirements.

## II

■ McKay contends that the county was obliged under I.C. § 54–1926 to require that Whitmore furnish a performance bond executed by a surety authorized to do business in Idaho. We agree.

I.C. § 54–1926 [2] provides that "[b]efore any contract for the construction, altera-

---

Marilyn, another daughter. Margaret, Janice and Marilyn released their interests in the certificates, "upon consideration of love and affection for our husband and father Carl E. Whitmore, upon consideration of the community property and family support benefits which will accrue to each of us individually from the Ada County Landfill contract, and upon consideration of $1.00 each from Carl E. Whitmore and Ada County."

2. "54–1926. PERFORMANCE AND PAYMENT BONDS REQUIRED OF CONTRACTORS FOR PUBLIC BUILDINGS AND PUBLIC WORKS OF THE STATE, POLITICAL SUBDIVISIONS AND OTHER PUBLIC INSTRUMENTALITIES—REQUIREMENTS FOR BONDS.— Before any contract for the construction, alter-

ation, or repair of any public building or public work or improvement of the state of Idaho, or of any county . . . is awarded to any person, he shall furnish to the state of Idaho, or to such county . . . bonds which shall become binding upon the award of the contract to such person, who is hereinafter designated as 'contractor':

"(1) A performance bond in any amount to be fixed by the contracting body, but in no event less than 50 per cent of the contract amount conditioned upon the faithful performance of the contract in accordance with the plans, specifications and conditions thereof. Said bond shall be solely for the protection of the public body awarding the contract,

"(2) A payment bond in an amount to be fixed by the contracting body but in no event

tion, or repair of any public building or public work or improvement . . . is awarded to any person, he shall furnish . . . bonds" for "faithful performance of the contract" and "protection of persons supplying labor or materials to the contractor." The statute further mandates that "[e]ach bond shall be executed by a surety company or companies duly authorized to do business in this state."

In our view, the statutory bonding requirement applies to the sanitary landfill or solid waste disposal system for the operation of which the county solicited bids. First, we consider the construction and operation of a solid waste disposal system to be a "public work or improvement" within the meaning of I.C. § 54–1926.[3] However, even if, as the dissent apparently assumes, the definition of "public work or improvement" were not broad enough to conclude a solid waste disposal system, there is a clear legislative pronouncement that leads to the same result. The legislature, in its wisdom, has declared in I.C. § 31–4402[4] that a solid waste disposal system is "a public building within the definition of chapter 10, title 31,

Idaho Code." Ada County's sanitary landfill is a solid waste disposal system and is therefore a public building within the meaning of I.C. § 31–1001.[5] That statute provides that "the contract for the erection of any such [public] buildings must be let . . . to the lowest bidder who will give security for the completion of any contract he may make respecting the same." The nature of the security that a contractor engaged in the construction of a public building must give is set forth in I.C. § 54–1926. Thus, one who contracts to construct a public building within the meaning of I.C. § 31–1001 must give security in the form of bonds executed by one or more surety companies authorized to do business in Idaho. Ada County's Sanitary Landfill is such a public building by virtue of I.C. § 31–4402, and the county therefore could not properly award the contract until Whitmore furnished such a bond.

Whitmore and the county argue that the indemnity bond that Whitmore furnished constituted adequate security. While we entertain considerable doubt respecting the protection afforded by the in-

---

less than 50 per cent of the contract amount, solely for the protection of persons supplying labor or materials to the contractor or his subcontractors in the prosecution of the work provided for in such contract.

"Each bond shall be executed by a surety company or companies duly authorized to do business in this state. . . .

. . . . .

"Nothing in this section shall be construed to limit the authority of the state of Idaho or other public body hereinabove mentioned to require a performance bond or other security in addition to these, or in cases other than the cases specified in this act.

"It shall be illegal for the invitation for bids, or any person acting or purporting to act, on behalf of the contracting body to require that such bonds be furnished by a particular surety company, or through a particular agent or broker."

**3.** In Part III of this opinion we hold that operation of a solid waste disposal system constitutes "public works construction" within the meaning of I.C. § 54–1901. Strictly speaking, the definitions set forth in I.C. § 54–1901 do not apply to the terms used in I.C. § 54–1926; although contained in the same chapter of the code, the sections were part of separate acts.

Nevertheless, the definition of public works construction contained in I.C. § 54–1901 reinforces our categorization of a solid waste disposal system as a "public work or improvement."

**4.** "31–4402. AUTHORITY OF COUNTY COMMISSIONERS.— . . . [T]he provisions of chapter 10, title 31, Idaho Code, are hereby made applicable for the acquisition of solid waste disposal systems and a solid waste disposal system is declared to be a public building within the definition of chapter 10, title 31, Idaho."

**5.** "31–1001. ERECTION OF BUILDINGS—FURNISHING OF OFFICES—CONTRACTS—LEASE OF PREMISES FOR COURTHOUSE OR JAIL—BOOKS AND STATIONERY.—The board must cause to be erected or furnished, a courthouse, jail and such other public buildings as may be necessary . . .: provided, that the contract for the erection of any such buildings must be let, after thirty (30) days' notice for proposals, to the lowest bidder who will give security for the completion of any contract he may make respecting the same; . . . ."

demnity bond,[6] that question is not here. I.C. § 54–1926 requires a bond executed by a surety authorized to do business in Idaho, and the county was not at liberty to waive that requirement in favor of some alternative form of security. *Cf. Nielsen & Co. v. Cassia & Twin Falls County School Dist.,* 96 Idaho 763, 536 P.2d 1113 (1975) (school board could not waive statutory requirement that bid for public works project name properly licensed electrical and mechanical subcontractors).

### III

■ McKay also asserts that Whitmore was not eligible to bid on or receive the county's sanitary landfill contract because Whitmore did not have a public works contractor's license as required by I.C. § 54–1902. Again, we agree.

It is unlawful under I.C. § 54–1902[7] for any person not particularly exempted "to engage in the business or act in the capacity of a public works contractor within this state without first obtaining and having a license therefor." A "public works contractor" is defined in subsection (b) of I.C. § 54–1901[8] as "any person who, in any capacity, undertakes to, or offers to undertake to, or purports to contract with, the state of Idaho," or any of a number of its political subdivisions, including a county,

---

6. The potential inadequacies of the bond are numerous, as McKay's brief amply demonstrates. Carl Whitmore bound himself to indemnify the county against losses incurred in consequence of his own failure to perform the county's contract with Whitmore Transportation Services, Inc. Yet Carl Whitmore individually had no contractual obligation to operate the county's sanitary landfill project, and it is unclear whether losses sustained by the county could be attributed to his failure to do so. The savings certificates that Carl deposited to secure the promised indemnification belonged not only to Carl but also to his wife and daughters. *See* note 1 *supra.* The effect of their purported releases is open to question. Furthermore, the savings certificates could be subject to execution under previously filed federal tax liens. See 26 U.S.C. §§ 6321, 6323 (1970). The restrictive endorsements, while possibly affecting the rights of the payees to negotiate the certificates immediately, did not purport to create any security interest in the county, and thus would be of doubtful validity against a judgment creditor, an Internal Revenue Service lien or levy, or a trustee in bankruptcy of the payee. The several uncertainties attendant to Whitmore's "indemnity bond" are examples of the sorts of problems that the legislature apparently attempted to eliminate by requiring in I.C. § 54–1926 that public works contractors furnish bonds executed by surety companies authorized to do business in this state.

7. "54–1902. UNLAWFUL TO ENGAGE IN PUBLIC WORKS CONTRACTING WITHOUT LICENSE.—It shall be unlawful for any person to engage in the business or act in the capacity of a public works contractor within this state without first obtaining and having a license therefor, as herein provided, unless such person is particularly exempted as provided in this act . . .; provided, however, that no contractor shall be required to have a license under

this act in order to submit a bid or proposal for contracts for public works financed in whole or in part by federal aid funds, but at or prior to the award and execution of any such contract by the state of Idaho, or any other contracting authority mentioned in this act, the successful bidder shall secure a license as provided in this act."

8. "54–1901. DEFINITIONS.—For the interpretation of this act, unless the context indicates a different meaning:

. . . . .

"(b) 'Public works contractor' . . . includes any person who, in any capacity, undertakes to, or offers to undertake to, or purports to have the capacity to undertake to, submit a proposal to, or enter into a contract with, the state of Idaho, or any county, city, town, village, school district, irrigation district, drainage district, sewer district, fire district, or any other taxing subdivision or district of any public or quasi public corporation of the state, or with any agency of any thereof, or with any other public board, body, commission, department or agency, or officer or representative thereof, authorized to let or award contracts for the construction, repair or reconstruction of any public work.

"(c) 'Public works construction' includes any or all of the following branches:

"(1) Heavy construction, which is defined as constructing substantially in its entirety any fixed works and structures (not including 'building construction'), without limitation, for any or all of the following divisions of subjects: irrigation, drainage, sanitation, sewerage, water power, water supply, reservoirs, flood control, reclamation, inland waterways, railroads, grade separations, subways, track elevation, elevated highways, hydro-electric developments, aqueducts, transmission lines, duct lines, pipelines, locks, dams, dykes, levies

"authorized to let or award contracts for the construction, repair or reconstruction of any public work." Subsection (c) of the same statute defines public works construction to include, among other things, "constructing substantially in its entirety any fixed works and structures . . . for any or all of the following divisions of subjects: . . . sanitation, . . . reclamation, . . . excavation and disposal of earth and rocks, . . . and other facilities incidental to the same."

▪ Sanitary landfill, or solid waste disposal, is clearly public works construction within the meaning of I.C. § 54–1901. The permanent internment of refuse beneath earth and rocks amounts to the creation of a fixed structure. The structure contributes to sanitation, excavation and disposal of earth and rocks, and land reclamation. By offering to undertake this sanitary landfill project, Whitmore was acting in the capacity of a public works contractor. This was unlawful under I.C. § 54–1902, since Whitmore lacked a public works contractor's license.

▪ Whitmore and the county have argued that even if Whitmore was required to have such a license, the lack of the license would not make the contract void. This was one of the bases upon which the trial court denied relief to McKay. However, even if this argument were correct, *but see Zimmerman v. Brown,* 30 Idaho 640, 166 P. 924 (1917), it would not follow that the making or performance of a contract in violation of a licensing provision could not be enjoined. In fact, there have been countless cases in which persons operating without a required license to pursue a profession or engage in a business have been enjoined from doing so. *E. g., Board of Dentistry v. Barnes,* 94 Idaho 486, 491 P.2d 1258 (1971) (dentistry); *Murphy v. Florida Real Estate Comm'n,* 115 So.2d 187 (Fla. Dist.Ct.App.1959) (course of study in real estate practice); *Burden v. Hoover,* 9 Ill.2d

114, 137 N.E.2d 59 (1956) (licensed chiropractor granted injunction to halt unlicensed practice); *Frazee v. Citizens Fidelity Bank & Trust Co.,* 393 S.W.2d 778 (Ky.1965) (law); *Board of Health v. Vink,* 184 Mich. 688, 151 N.W. 672 (1915) (collection of garbage); *Evans v. Hoyme,* 78 S.D. 509, 105 N.W.2d 71 (1960) (citizen plaintiff granted injunction to halt unlicensed treatment of human ills). In this light, it is apparent that even if the county's contract with Whitmore is not absolutely void as between the parties to it, McKay may nevertheless be entitled to injunctive relief against Whitmore's continued performance without a public works contractor's license. *See* I.R.C.P. 54(c).

Based upon our holdings that Whitmore was required to have a public works contractor's license and to furnish a bond executed by a surety company authorized to do business in Idaho, we reverse and remand for further proceedings.

▪ McKay has, in effect, acted as a private attorney general in protecting the public interests expressed by I.C. §§ 54–1902, –1926. Therefore, on remand the trial court should award reasonable attorney fees to McKay for the original proceedings in the trial court and on appeal, pursuant to I.C. § 12–121.

Costs to appellant.

McFADDEN and BISTLINE, JJ., concur.

SHEPARD, Chief Justice, dissenting.

The core of the majority opinion is that the "operation of the county's sanitary landfill site" constitutes the "construction, repair or reconstruction of * * * (a) public work." As noted, the construction of a public work includes "*constructing* substantially in its entirety any fixed works and structures * * *." The majority states "The permanent internment of refuse beneath earth and rocks amounts to the creation of a fixed structure."

I could not disagree more. In truth and fact the situation is far less professional

---

(levees), revetments, channels, channel cutoffs, intakes, drainage, excavation and disposal of earth and rocks, foundations, piers, abutments, retaining walls, viaducts, shafts, tunnels, airports, air bases and airways, and other facilities incidental to the same;

. . . ."

and intricate than would be indicated by the majority's gloss. As in any concentration of population Ada County has for a number of years had a problem of trash, garbage and general refuse disposal. Such is a substantially different problem than that faced by governmental units in converting from the old fashioned outhouse method of solid waste disposal to disposal by means of individual septic tanks and in turn, a system of solid waste disposal consisting of miles of sewer pipes ultimately culminating in a sophisticated plant for the reduction and disposal of those wastes.

Ada County, as did other governmental entities, for many years maintained a "dump" at which garbage, trash and general refuse was deposited and in many cases burned. Exacting standards relating to pollution, both air and otherwise, had dictated the necessity of new methodology. Thus, Ada County, like many governmental units, sought out what amounted to a large hole in the ground. Seaman's Gulch has been utilized for many years by Ada County as such a hole in the ground for the deposit of garbage, trash and refuse. It was determined that such methodology would better suit environmental necessities. Refuse is deposited, compacted by machine and then covered over with earth fill to eliminate the danger of fire and other atmospheric pollutants.

Such an operation has been conducted for several years by various operators. To hold that such an operation constitutes the *construction* of a public work or building, strains my credulity. As contemplated by the contract and specifications, the "operator" accepts refuse at the designated site, compacts it to certain density and covers it with earth in conformance with certain required levels or lifts. The operator is paid a fixed sum for such *service* and presumably such a procedure will go on indefinitely until all the holes in the ground in Ada County have been so filled or until some other methodology is devised. Rather obviously, there is no anticipated completion of a constructed "building" or "work" as contrasted with a *construction* contract contemplated by the statutes.

Since the majority opinion is premised on what in my judgment is an erroneous understanding of the nature of the work contemplated here, the remainder of the opinion relating to bonding and bidding requirements must also fall. I would affirm the judgment of the district court.

DONALDSON, J., concurs.