## MUNICIPALITY OF ANCHORAGE, Appellant,

v.

## TATCO, INC.; Charles L. Harlan; Wilder Construction Co., Inc.; Northway Development, Inc.; Denali Fuel Co.; and James Holt, d/b/a Commercial Services, Appellees.

### No. S–2697.

Supreme Court of Alaska.

May 12, 1989.

---

Richard D. Kibby, Mun. Atty., Kevin Finnigan, and Scott Brandt–Erichsen, Asst. Mun. Attys., Anchorage, for appellant.

David S. Johnson, Hoge and Lekisch, Anchorage, for appellee Northway Development, Inc.

Randall E. Farleigh, Farleigh & Waldock, Anchorage, for appellee Wilder Const. Co., Inc.

Donald C. Ellis, Kemppel, Huffman & Ginder, Anchorage, for appellee Denali Fuel Co.

James D. Holt, Anchorage, pro se.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

### OPINION

MOORE, Justice.

This case presents the question of whether Alaska's Little Miller Act, AS 36.25.010–36.25.025, applies to a contract for the delivery of "cover material" to a solid refuse landfill operated by the Municipality of Anchorage (MOA). The four appellees seek to recover from MOA for materials appellees supplied to TATCO, Inc. ("Tatco") in the course of Tatco's performance of a landfill contract with MOA.[1] Appellees' claims are based on MOA's failure to require Tatco to post a payment bond as allegedly required by statute and/or contract and MOA's failure to require Tatco to certify that all its laborers and material-

men had been paid. MOA appeals from the trial court's grant of summary judgment for appellees.

### I.

In July 1986, MOA invited bids on a contract to provide cover material for a solid waste landfill MOA was operating. Tatco was awarded the contract on October 9, 1986.

The contract between MOA and Tatco calls for the delivery of "cover (soil) material" to the "active working face" of the Municipal Landfill in "end dumping trucks" from September, 1986 to August, 1987. The "Contractor shall submit on a monthly basis, invoices equal to the quantities delivered and payment will be made by the Municipality within 30 calendar days."

The contract incorporates by reference the Municipality of Anchorage Standard Specifications, General Provisions ("MASSGP").[2] MASSGP Article 3.5 provides that the successful bidder shall provide a performance and payment bond. MASSGP Article 7.7 requires MOA to retain part of the contract price for at least 90 days following final acceptance of the work. Further, before final payment is disbursed, the contractor must file a Certificate of Compliance stating that all claims have been paid.

Theo Chenier, purchasing officer for MOA, stated in an affidavit that MOA normally deletes those specific provisions of the MASSGP which are not intended to apply to a specific contract. He stated that this was not done in this case due to "administrative oversight." Chenier stated that MOA never intended to require a bond from Tatco or to retain any part of the contract price after delivery of the cover material.

The contract supports Chenier's testimony. On the page dealing with "Compliance with Laws," it states that "Only those

---

1. The appellees are Northway Development, Inc. ("Northway"), Wilder Construction Co., Inc. ("Wilder"), Denali Fuel Co. ("Denali"), and James Holt ("Holt").

2. The Standard Specifications are published in booklet form and contain numerous provisions. According to MOA's purchasing officer, "[n]ot all parts of the Standard Specifications are applicable to every contract."

paragraphs marked below will be applicable." The paragraph incorporating the MASSGP is marked, but the paragraphs requiring the contractor to post a bid bond, a performance bond or a payment bond are not marked. The provision on payments by MOA to Tatco provides for payment within 30 days for the "quantities delivered," without mention of retainage.

Tatco performed its contract with MOA satisfactorily from September 1986 through May 1987. Appellees provided Tatco with goods and services that Tatco used in the course of its performance. Holt provided trucking services. Northway provided cover material and related equipment and labor. Wilder provided cover material. Denali provided fuel, oil, and lubricants.

From October 1986 through April 1987, MOA paid Tatco directly each month for services performed the prior month. In April and May of 1987, MOA began to receive notice from Tatco's creditors that Tatco was not paying them. Tatco's creditors, including appellees, submitted written notices of their claims against Tatco to MOA. MOA was aware of the problem and discussed potential solutions with Tatco, but did not concede to Tatco's creditors that Tatco should have posted a bond or that MOA was responsible to the creditors. Tatco eventually agreed to allow MOA to disburse funds due Tatco to a trust fund for the benefit of appellees. However, on May 27, 1987, before MOA's accounts payable department was aware of this plan, Tatco's Sue Harlan was given a check for $29,867.27. She immediately cashed the check but used none of it to pay the creditors. MOA disbursed Tatco's final payment directly to the trust fund on June 10, 1987.

With substantial claims remaining unpaid, Wilder, Northway, and Denali filed suit against Tatco and MOA on June 12, 1987. They sought $92,826.42 in compensatory damages and other relief. Holt intervened on August 26, 1987. MOA moved to be dismissed from the suit, contending that it was not responsible to appellees. Appellees moved for partial summary judgment.

On December 11, 1987, the trial court, Judge J. Justin Ripley, issued an order denying MOA's motion to dismiss, granting appellees' motions for partial summary judgment, and granting appellees leave to move for final judgment under Civil Rule 54(a). Claiming that the basis for liability was not clear, MOA moved for clarification of the order and for relief from the judgment pursuant to Civil Rule 60(b). Judge Ripley denied MOA's motions and entered final judgment for appellees. MOA appeals.

## II.

Appellees pursue two theories of recovery. First, they contend that the MOA–Tatco contract was subject to the Little Miller Act's bonding requirement as a matter of law.[3] Second, they contend that

---

3. AS 36.25.010, Bonds of contractors for public buildings or works, provides in relevant part:

(a) ... [B]efore a contract exceeding $100,000 for the construction, alteration, or repair of a public building or public work of the state or a political subdivision of the state is awarded to a general or specialty contractor, the contractor shall furnish ... the following bonds ...:

(1) a performance bond ...; the amount of the performance bond shall be equivalent to the amount of the payment bond; (2) a payment bond ... for the protection of all persons who supply labor and material in the prosecution of the work provided for in the contract;

. . . . .

(b) This section does not limit the authority of a contracting officer to require a performance bond or other security in addition to those, or in cases other than the cases specified in (a) ...

(c) When no payment bond has been furnished, the contracting department may not approve final payments to the contractor until the contractor files a written certification that all persons who supplied labor or material in the prosecution of the work provided for in the contract have been paid.

AS 36.25.020, Rights of persons furnishing labor or material, provides that:

(a) A person who furnishes labor or material in the prosecution of the work provided for in the contract for which a payment bond is furnished under AS 36.25.010 and who is not paid in full before the expiration of 90 days after the last day on which the labor is performed or material is furnished for which the

even if not statutorily required, the contract between MOA and Tatco required a bond, and appellees are intended third party beneficiaries of that requirement. MOA contends that the contract was merely a supply contract, not a public construction contract, and thus was not within the scope of the Little Miller Act's bonding requirement. MOA also contends that appellees have no third party beneficiary claim since neither MOA nor Tatco intended to require a bond.

First we address the propriety of disposing of these questions on summary judgment. MOA contends that summary judgment was improper because a question of material fact existed as to whether Tatco's performance was such as to implicate the Little Miller Act. We disagree.

When reviewing the grant of summary judgment, this court must determine whether, from the facts gleaned from a review of the pleadings and affidavits, "a genuine issue of material fact exists and whether the moving party deserves judgment as a matter of law." *McGee Steel Co. v. State, McDonald Industries,* 723 P.2d 611, 614 (Alaska 1986); Alaska Rule of Civil Procedure 56(c).

The pleadings and affidavits before the court establish that the Tatco dump trucks delivered the material to the directed spot at the landfill, dumped it, and drove away. MOA employees did everything else. No issue of material fact remained on this question. The question of whether the contract came within the scope of the Little Miller Act was thus properly decided on summary judgment; the court faced a

purely legal question of statutory interpretation.

Addressing appellees' third party beneficiary claim, MOA had filed an affidavit with the court stating that MOA never intended to require the posting of a bond. Appellees argue that the parties' subjective intent is irrelevant for purposes of summary judgment and that this court "must evaluate the contract ... by giving effect to the parties' reasonable expectations." *See Peterson v. Wirum,* 625 P.2d 866, 870 (Alaska 1981); *Day v. A & G Constr. Co., Inc.,* 528 P.2d 440, 444 (Alaska 1974).

■ Even if we conceded that the subjective intentions of the two parties to the contract were irrelevant to determining on summary judgment whether a third party was an intended beneficiary, the result in this case would not differ. Although the present contract did adopt the MASSGP en masse, MOA's and Tatco's "reasonable expectations" were more specifically manifested by other provisions. The boxes providing for payment and performance bonds were not marked. The contract called for full payment within 30 days for fill delivered the month before. These provisions are in direct conflict with the MASSGP provisions on which appellees rely.

We find that MOA's and Tatco's reasonable expectations were, as a matter of law, that Tatco would not be required to post a bond. This question was thus ripe for summary judgment.

### III.

■ The question remaining is whether, as a matter of law, the contract comes

---

claim is made, may sue on the payment bond for the amount unpaid at the time of the suit. (b) However, a person having direct contractual relationships with a subcontractor but no contractual relationship express or implied with the contractor furnishing the payment bond has a right of action on the payment bond upon giving written notice to the contractor within 90 days from the last date on which the person performed labor or furnished material for which the claim is made. The notice must state with substantial accuracy the amount claimed and the name of the person to whom the material was furnished or for whom the labor was performed. The notice shall be served by mailing it by reg-

istered mail, postage prepaid, in an envelope addressed to the contractor at any place where the contractor maintains an office or conducts business, or the contractor's residence, or in any manner in which a peace officer is authorized to serve summons. (c) A suit brought under this section shall be brought in the name of the state or the political subdivision of the state for the use of the person suing in the court with jurisdiction. A suit under this section is subject to AS 08.18.-151. A suit may not be started after the expiration of one year after the date of final settlement of the contract. The state or political subdivision of the state is not liable for costs or expenses of the suit.

within the scope of the Little Miller Act. MOA argues that the contract was a simple supply contract, requiring no bond because no public construction was involved. MOA refers to the Invitation for Bids which called for bids on a strictly "FOB destination" basis, and the fact that Tatco played no role in the process of mixing the cover material with the refuse. Appellees, quoting AS 36.25.010(a), argue that by providing the cover material, Tatco " 'construct[ed], alter[ed] or repair[ed]' the physical landscape from that which would have existed without the material," thus invoking the bonding requirement applicable to public construction contracts.

Alaska's Little Miller Act, AS 36.25.010–36.25.025, is modeled after the federal Miller Act, 40 U.S.C. § 270a *et seq.* The Act gives laborers and materialmen protection against nonpayment for work done on public construction or public works contracts. This court has stated that

> The purpose of AS 36.25.010 and AS 36.25.020 is to protect persons who furnish labor or material for a state public works project from the risk of nonpayment. In exchange for providing such protection, the state is assured that material and labor will be readily furnished for its projects. Persons who furnish labor and materials for the state's projects do so in reliance on the existence of a valid payment bond.

*State v. Neal and Sons, Inc.,* 489 P.2d 1016, 1020 (Alaska 1971) (Materialmen need not inquire into validity of posted bond; burden is on insurance company in Little Miller Act cases to rebut presumption of validity. Statute construed to avoid "reluctance and possible delays" that placing burden of inquiry on materialmen may produce). *See also United Bonding Ins. Co. v. Castle,* 444 P.2d 454, 457–58 (Alaska 1968) (presumption arises that bond required by statute has been provided).

The relevant statute, AS 36.25.010(a), requires a bond where there is "a contract ... for the construction, alteration, or repair of a public building or public work." [4] The instant contract calls for the delivery of soil to various points within the landfill. The landfill is a public facility, but the contract is not one "for the construction, alteration, or repair" of it. While it is questionable whether the mixing of dirt and refuse is "construction" or "alteration," it is clear beyond doubt that the present contract is not "for" that mixing. The contract is for the delivery of soil. MOA has decided to do the mixing itself, rather than contract it out.

The present case is factually analogous to *Rogers v. County of Nez Perce,* 83 Idaho 467, 364 P.2d 1049 (1961). There the Idaho Supreme Court held that a contract for the "crushing and stockpiling of gravel for some future use" was "not ... a contract for 'construction, alteration or repair,' " so "no bond was required." *Id.* at 1050. We do not find *McKay Construction Co. v. Ada County Bd. of County Commissioners,* 99 Idaho 235, 580 P.2d 412 (1978), or *State ex rel. Modern Motor Co., Inc. v. H & K Construction Co.,* 75 Idaho 492, 274 P.2d 1002 (1954), to be on point. The contract in *McKay* called for the operation of the landfill, and the contractor in *H & K Construction Co.* participated actively in the road construction.

We hold that the instant contract was a supply contract which did not come within the scope of the Little Miller Act's bonding requirement. Rather than have Tatco stockpile the soil in some spot prior to its use, as was done in *Rogers,* MOA chose to have Tatco deliver it to the site of its use at the time of its use. This does not change the basic character of the contract. Dumping soil out of a dump truck is not, by itself, the "construction, alteration, or repair of a ... public work."

Appellees' claims thus fail under either theory of recovery. The contract, as a matter of law, did not come within the

---

**4.** "Public construction" is defined in AS 36.95.010 as the "on-site field surveying, erection, rehabilitation, alteration, extension or repair ... of buildings, highways or other improvements to real property under contract for ... a political subdivision of the state."

scope of the Little Miller Act, and the contracting parties made no promise of which appellees were the beneficiaries. We thus need not address the parties' remaining contentions. The lower court's judgment is therefore REVERSED and REMANDED with instructions to grant MOA's motion to dismiss.