## IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37398-2010

| | | |
|---|---|---|
| HILLSIDE LANDSCAPE CONSTRUCTION, INC., an Idaho corporation, | ) ) ) ) | Coeur d'Alene, September 2011 Term |
| Plaintiff-Appellant-Cross Respondent, | ) ) | 2011 Opinion No. 104 |
| v. | ) ) | Filed: November 2, 2011 |
| CITY OF LEWISTON, an Idaho municipal corporation, | ) ) ) | Stephen W. Kenyon, Clerk |
| Defendant-Respondent-Cross Appellant. | ) ) ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, in and for Nez Perce County. The Hon. Jeff Brudie, District Judge.

The judgment of the district court is vacated.

Ronald T. Blewett; Clark and Feeney, LLP; Lewiston; argued for appellant.

Stephen Adams; Anderson, Julian & Hull, LLP; Boise; argued for respondent.

_____

EISMANN, Justice.

This is an appeal from a judgment dismissing a challenge to a city's action in rejecting a bid for a public works project on the ground that the low bidder lacked sufficient experience for the project. Because the city chose to follow the Category A procedures set forth in Idaho Code section 67-2805(3) rather than the Category B procedures, the district court erred in holding that it could reject the bid on that ground. We therefore vacate the judgment of the district court and remand this case for further proceedings that are consistent with this opinion.

## I.

## Factual Background

In 2009, the City of Lewiston (City) advertised for bids to replace the irrigation system at the City golf course. The advertisement included the following:

> In order to be considered a Qualified Bidder, the bidder must hold a current Idaho Public Works Contractor's License in golf course construction and previously completed the following work:
>
> > The Contractor and his Irrigation Foreman must have completed a minimum of eighteen (18) holes (1-18 hole or 2-9 hole) golf course project(s) in the past three (3) years for which he/she was responsible for all aspects of construction of a new irrigation system installed on an existing golf course. For this work, the Contractor and his Irrigation Foreman must have installed the system(s) with all HDPE pipe.

Hillside Landscape Construction, Inc. (Hillside) desired to bid on the project, but prior to doing so it sent a letter dated October 14, 2009, to the City stating that if City insists upon having qualifications other than a current Idaho public works license to bid on the project, City must follow the Category B procedures set forth in Idaho Code section 67-2805(3)(b) and pre-qualify the bidders. Hillside asked that the qualification of prior experience be removed. By letter dated October 23, 2009, City's attorney denied the request, stating that City's specifications and bidding process comply with state law.

Hillside and four others submitted bids for the project. By letter dated October 26, 2009, City notified the bidders: "Hillside Landscape Construction submitted the lowest bid, $868,380, but was found to be non-compliant in that the company lacked the required experience specified within the bid documents. Landscapes Unlimited was the next lowest bidder. The bid was deemed compliant." City awarded the contract to Landscapes Unlimited. Hillside again objected, but City denied the objection.

On November 30, 2009, Hillside filed a complaint seeking injunctive relief, declaratory relief, and damages. On the same date, it also filed a motion for a temporary restraining order. The district court issued the temporary restraining order on December 1, 2009. An evidentiary hearing on Hillside's request for a preliminary injunction was held on December 21, 2009. The district court held that City complied with the bidding statutes, and it vacated the temporary

2

restraining order and denied the motion for an injunction. On January 27, 2010, it entered a judgment dismissing Hillside's complaint.

On February 4, 2010, City filed a motion seeking an award of attorney fees and costs pursuant to Idaho Code section 12-117 and Rule 65(c) of the Idaho Rules of Civil Procedure. On February 16, 2010, Hillside filed a motion to disallow costs. The district court denied the request for attorney fees under section 12-117 because in challenging the bidding process Hillside did not act without a reasonable basis in law, due to the ambiguity of the applicable statutes. It denied the request for attorney fees under Rule 65(c) on the ground that City failed to itemize the legal services provided in connection with the preliminary injunction and those related to other aspects of the litigation. The court also denied City's request for discretionary costs and awarded it costs as a matter of right in the sum of $58.00. Hillside timely appealed from the judgment, and City timely cross-appealed from the order denying its request for attorney fees under Rule 65(c).

## II.

## Is This Case Moot?

After the district judge vacated the temporary restraining order and denied the request for an injunction, City awarded the contract to Landscapes Unlimited, and it completed the construction project. City argues that this action is now moot because Hillside cannot obtain the injunction it desired.

Generally, an issue is moot if it does not present a real and substantial controversy that is capable of being concluded through judicial decree of specific relief. *State v. Rogers*, 140 Idaho 223, 226, 91 P.3d 1127, 1130 (2004). In *Neilsen & Co. v. Cassia and Twin Falls County Joint Class A School District No. 151*, 96 Idaho 763, 536 P.2d 1113 (1975), the school district awarded a contract to the lowest bidder, and the second lowest bidder sued, contending that the bid submitted by the lowest bidder was void for violating a statute requiring the general contractor to list licensed subcontractors. On appeal, we agreed stating, "It appears self-evident that a bid determined unresponsive and void under I.C. § 67-2310 cannot qualify as a responsible bid under I.C. § 33-601." *Id.* at 765, 536 P.2d at 1115. We held that because the plaintiff had amended its complaint to seek damages, they should be awarded.

> The appellant, in amended pleadings, now seeks relief only for damages incurred in bidding the contract. Damages should be awarded. The district court,

in finding for the respondents, entered no findings of fact concerning damages. We therefore remand the case to the district court for determination of damages.

*Id*. at 766, 536 P.2d at 1116.

In the instant case, Hillside has also alleged that it is entitled to recover damages. That claim was dismissed on the ground that City did not violate the bidding statute. Even though Hillside cannot recover injunctive relief, the case is not moot because it has a claim for damages.

### III.

### Under Category A Bidding Procedures, Could the City Disallow
### a Bid on the Ground that the Bidder Lacked Sufficient Experience?

In 1967, the legislature enacted a comprehensive recodification and revision of state laws relating to municipal corporations. Ch. 429, §§ 1-474, 1967 Idaho Sess. Laws 1249, 1249-1415. The enactment included competitive bidding provisions applicable to all cities in the state of Idaho. *Id*., § 67 at 1269-72. As initially enacted, it included a provision stating, "When the expenditure contemplated exceeds two thousand five hundred dollars ($2,500), the expenditure shall be contracted for and let to the lowest responsible bidder." *Id*. at 1270 (codified as Idaho Code section 50-341). The requirement that the expenditure be contracted for and let to "the lowest responsible bidder" remained in the statute, although the expenditures to which it applied were ultimately increased to those exceeding $25,000. Ch. 164, § 1, 1995 Idaho Sess. Laws 644, 645.

In 2005, the legislature repealed Idaho Code section 50-341, which provided that the contract would be let to the lowest *responsible* bidder. Ch. 213, § 17, 2005 Idaho Sess. Laws 635, 653. It enacted new statutes governing the procurement of goods, services, and public works construction by political subdivisions of the State, including cities. *Id*. § 37 at 668-79. This case involves the construction of one of those statutes, Idaho Code section 67-2805.

For public works construction valued in excess of $100,000, the statute provides two alternative bidding procedures named "Category A" and "Category B." I.C. § 67-2805(3). The primary difference between the two procedures is the determination of a "qualified bidder."

Under Category B, there are "two (2) stages, an initial stage determining supplemental prequalifications for licensed contractors, either prime or specialty contractors, followed by a stage during which bid prices will be accepted only from prequalified contractors." *Id*. § 67-

4

2805(3)(b). The statute contains procedures for determining which interested contractors meet the prequalification standards. Those that do can then submit bids. Under Category A, there is no procedure for prequalification of the contractors.

In this case, City chose to proceed under Category A. The issue is whether City could have considered Hillside's lack of experience in rejecting its bid. As stated above, the prior statute permitted a city to award the contract to the lowest "responsible" bidder. Under that statute, "local governmental entities [were] afforded the sound discretion to determine whether a bidder [was] 'responsible.' " *Beco Const. Co., Inc. v. Idaho Falls*, 124 Idaho 859, 863, 865 P.2d 950, 954 (1993). Beco had submitted bids on two construction projects, but the city rejected them because of what it considered Beco's poor performance on an unrelated project. *Id*. at 860, 865 P.2d at 951. A bidder's responsibility, experience, and facilities for carrying out a contract are other factors this Court has cited as relevant to whether a bidder is responsible. *Seysler v. Mowery*, 29 Idaho 412, 418, 160 P. 262, 264 (1916).

The new statute does not contain the wording "lowest responsible bidder." It provides, "The purchase of construction services shall be made pursuant to a competitive sealed bid process with the purchase to be made from the qualified public works contractor submitting the lowest bid price complying with bidding procedures and meeting the prequalifications, if any are provided, established by the bid documents." I.C. § 67-2805(3).

If the political subdivision chooses to proceed under Category A, the statute provides that it "*may only consider* the amount bid, bidder compliance with administrative requirements of the bidding process, and whether the bidder holds the requisite license, and shall award the bid to the *qualified* bidder submitting the lowest responsive bid." *Id.* § 67-2805(3)(a) (emphases added). If a political subdivision could consider factors other than those listed in determining whether a bidder is qualified, then the words "may only consider" would be meaningless.

Under Category B, the political subdivision can consider other factors, such as experience, under the prequalification procedure. The statute provides, "Political subdivisions may establish prequalification standards premised upon demonstrated technical competence, experience constructing similar facilities, prior experience with the political subdivision, available nonfinancial resources, equipment and personnel as they relate to the subject project, and overall performance history based upon a contractor's entire body of work." *Id*. § 67-2805(3)(b)(i).

5

One obvious purpose of the statutory change was to establish a procedure for determining whether a contractor met certain standards to be considered a qualified bidder prior to submitting the bid. Under the prior statute, that decision could be made after the bids were opened. In addition, the bidders may not have advance notice of what qualifications were required. In *Beco*, there was no indication that Beco had advance notice that its quality of work on a different project would be considered in deciding whether it was a responsible bidder. If a political subdivision desires to require qualifications other than the ones listed under Category A, then it must proceed under Category B.

In contending that it had the discretion under Category A to reject Hillside's bid on the ground that it lacked experience, City argues: "First, as discussed above, the historical mandate was that the bid be awarded to the lowest responsive bidder.[1] As discussed above, this has never been construed as a mandate that the contract must be awarded to the lowest bidder. There has always been some leeway, including a determination of whether the bidder is the best contractor for the job (which language is inherent in the language 'responsible')."

The words "responsible bidder" are not contained in Idaho Code section 67-2805. Now, the applicable language is "qualified bidder." As stated above, under Category A "the political subdivision may only consider the amount bid, bidder compliance with administrative requirements of the bidding process, and whether the bidder holds the requisite license, and shall award the bid to the qualified bidder submitting the lowest responsive bid." City asserts that the first two factors are not related to a bidder's qualifications, and holding the requisite license similarly does not show that the bidder has the experience to complete the project. Under Category A, a bidder holding the requisite license is qualified. If a political subdivision wants to require qualifications other than holding the requisite license, then it must proceed under Category B.

Next, City argues, and the district court held, that two subsections of the statute permitted City to consider other factors when determining whether the bidder was qualified. Subsection (3)(a)(ix) provides that if the contract is awarded to other than "the apparent low bidder, the political subdivision shall declare its reason or reasons on the record." Subsection (3)(a)(x)

---

[1] City may have meant "responsible" here, rather than "responsive." Responsible and responsive are not synonymous. Responsible refers to the qualifications of the bidder, and responsive refers to whether the bid itself complies with applicable requirements.

6

provides for a review process of that decision, and concludes, "After completion of the review process, the political subdivision may proceed as it deems to be in the public interest."[2] City argues that these provisions allowed it to consider factors other than those listed under Category A.

If City's argument was adopted, then the words "may only consider the amount bid, bidder compliance with administrative requirements of the bidding process, and whether the bidder holds the requisite license" would be read out of the statute. We "must construe a statute as a whole, and consider all sections of applicable statutes together to determine the intent of the legislature. It is incumbent upon the court to give the statute an interpretation that will not deprive it of its potency." *Davaz v. Priest River Glass Co., Inc.*, 125 Idaho 333, 336, 870 P.2d 1292, 1295 (1994). "In determining the ordinary meaning of a statute 'effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant.' " *State v. Mercer*, 143 Idaho 108, 109, 138 P.3d 308, 309 (2006) (quoting *In re Winton Lumber Co.*, 57 Idaho 131, 136, 63 P.2d 664, 666 (1936)).

We presume that the legislature included the words at issue for a reason. The apparent purpose was to restrict discretion in determining whether a bidder was qualified. Under Category A, a bidder holding the requisite license is qualified. If the political subdivision believes that the requisite license is not, by itself, a sufficient qualification for the project contemplated, it can then proceed under Category B. Even then, however, the prequalification standards are circumscribed. "Political subdivisions may establish prequalification standards *premised upon* demonstrated technical competence, experience constructing similar facilities, prior experience with the political subdivision, available nonfinancial resources, equipment and

---

[2] Idaho Code section 67-2805(3)(ix) and (x) provide:

> (ix) If the governing board of any political subdivision chooses to award a competitively bid contract involving the procurement of public works construction to a bidder other than the apparent low bidder, the political subdivision shall declare its reason or reasons on the record and shall communicate such reason or reasons in writing to all persons who have submitted a competing bid.
> (x) If any participating bidder objects to such award, such bidder shall respond in writing to the notice from the political subdivision within seven (7) calendar days of the date of transmittal of the notice, setting forth in such response the express reason or reasons that the award decision of the governing board is in error. Thereafter, staying performance of any procurement until after addressing the contentions raised by the objecting bidder, the governing board shall review its decision and determine whether to affirm its prior award, modify the award, or choose to re-bid, setting forth its reason or reasons therefor. After completion of the review process, the political subdivision may proceed as it deems to be in the public interest.

personnel as they relate to the subject project, and overall performance history based upon a contractor's entire body of work." I.C. § 67-2805(3)(b)(i) (emphasis added). Under the wording of the statute, the list is exclusive, not illustrative. In addition, when the political subdivision requests qualifications statements from prospective bidders under Category B, "[s]uch request must include the standards for evaluating the qualifications of prospective bidders." *Id*. This requirement indicates a desire to make the prequalification determination more objective.

Construing the entire statute together and giving effect to all of its words, under Category A, the reason for awarding a public works contract to other than the apparent low bidder must be either that it was the apparent, but not the actual, low bidder; or that it did not comply with administrative requirements; or that it does not currently hold the requisite license. The political subdivision cannot add additional requirements either before or after inviting the bids. If it wants to do so, it must proceed under Category B.

City asserts that "there is no requirement in I.C. § 67-2805 as to when a Category A bid process must be used or when a Category B process must be used." That is correct. However, if a political subdivision chooses to use Category A, it cannot require qualifications for bidders other than holding the requisite license. If it wants to do so, then it must proceed under Category B.

The district court determined that "the difference between Category A bidding and Category B bidding is not whether the political subdivision can consider a bidder's qualifications for a specific project, rather it is the difference of <u>when</u> that determination is made." (Emphasis in original.) Certainly, one purpose of the statutory change was to provide a mechanism for having the qualifications of prospective bidders, other than holding the requisite license, determined beforehand in order to save those who lack specified qualifications the expense of preparing a bid. However, as stated above, Category A and Category B also differ in what can be considered when determining whether a bidder is qualified.

The district court erred in holding that under Category A City could reject Hillside's bid on the ground that Hillside did not possess the necessary experience, even where it was given notice of such qualification. City could not impose that qualification under Category A.

## IV.

### Is Either Party Entitled to an Award of Attorney Fees?

City has cross-appealed the district court's denial of its request for an award of attorney fees. Because we are vacating the judgment, we need not decide whether the district court correctly denied City attorney fees below.

City also contends that it is entitled to an award of attorney fees on appeal pursuant to Idaho Code section 12-117. Hillside contends that it is entitled to an award of attorney fees on appeal pursuant to that statute and 42 U.S.C. § 1988. Because we do not yet know who will prevail in this action, any determination of the prevailing party is premature. *City of McCall v. Buxton*, 146 Idaho 656, 667, 201 P.3d 629, 640 (2009). If the district court awards attorney fees to the prevailing party, it may also award attorney fees for this appeal.

## V.

### Conclusion

We vacate the judgment of the district court and remand this case for further proceedings that are consistent with this opinion. We award Hillside costs, but not attorney fees, on appeal.

Chief Justice BURDICK, Justice W. JONES, and Justices Pro Tem LUSTER and REINHARDT **CONCUR.**